# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### NO:  13-60002

| | |
|---|---|
| **TROUT POINT LODGE, LIMITED, A Nova Scotia Limited Company; VAUGHN PERRET and CHARLES LEARY** | **APPELLANTS** |
| **VERSUS** | |
| **DOUG K. HANDSHOE** | **APPELLEE** |

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

---

## BRIEF OF APPELLANTS, TROUT POINT LODGE, LIMITED, A NOVA SCOTIA LIMITED COMPANY, VAUGHN PERRET, AND CHARLES LEARY

Henry Laird (MSB No. 1774)
Email:  hlaird@joneswalker.com
JONES WALKER
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS  39502
Telephone: (228) 864-3094
Facsimile:(228)864-0516

{GP009605.1}

## CERTIFICATE OF INTEREST PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in Rule 28.2.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal. Parties in interest are:

1.    Trout Point Lodge, Vaughn Perret, and Charles Leary (Appellants), 140 Trout Point Road, Kemptville, Nova Scotia B0W1Y0.

2.    Doug K. Handshoe (Appellee), 345 Carroll Avenue, Bay St. Louis, Mississippi 39520.

3.    Chief District Judge Louis Guirola, Jr., 2012 15th Street, Suite 814, Gulfport, MS 39501.

4.    Chief Magistrate Judge John Roper, 2012 15th Street, Suite 870, Gulfport, MS 39501.

5.    G. Gerald Cruthird, Esquire (Counsel for Appellee), Post Office Box 1050, Picayune, MS 39466.

6.    Jack E. Truitt, Esquire (Counsel for Appellee), The Truitt Law Firm, LLC, 149 North New Hampshire Street, Covington, LA 70433.

7.    Henry Laird, Esquire (Counsel for Appellants), Jones Walker, Post Office Box 160, Gulfport, MS 39502.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants Trout Point Lodge, Limited, a Nova Scotia Limited Liability Company, Vaughn Perret and Charles Leary request oral argument and believe it would be helpful to the Court in deciding what may be a case of first impression in interpreting 28 U.S.C. § 4101 *et seq.* (The SPEECH Act) which Congress enacted to regulate entry of defamation judgments obtain in foreign countries against American citizens.   This is a fact intensive case and involves the comparative analysis of First Amendment considerations and defamation laws of the United States, Mississippi Canada.

# TABLE OF CONTENTS

PAGES

CERTIFICATE OF INTERESTED PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . .ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

LIST OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS RELEVANT TO THE
ISSUES SUBMITTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            The SPEECH Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

            Canadian Protection of Free Speech . . . . . . . . . . . . . . . . . . . . . . . . .12

            The Nova Scotia Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

                        Default Judgment Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . .14

                        Allegations and Proof of Falsity and Defamation . . . . . . . . . . . .18

                        Findings by the Court of Falsity and Defamation . . . . . . . . . . . . 20

            Mississippi Defamation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

To the Extent the District Court Based Its Opinion
Upon Facts or Alleged Facts Outside the Record
Before it, That Part of the Decision Should be
Disregarded on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF COMPLIANCE WITH RULE 32(A). . . . . . . . . . . . . . . 36

# LIST OF AUTHORITIES

CASES                                                                    PAGES

*Capitol One Services, Inc. v. C.J. Rawls,*
904 So. 2d 1010, 1018-19 (Miss. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Department of Human Services v. Shelnut,*
772 So. 2d 1041, 1043-47 (Miss. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Ehrenfeld v. Bin Mahfouz,*
881 N.E.2d 830 (N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Funderburk v. Johnson,*
 935 So. 2d 1084, 1102 (Miss. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . .25, 26

*Fulton v. Mississippi Publisher's Corp.*,
498 So. 2d 1215, 1216 (Miss. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Gamboa v. Grace Paint Co., Inc.*,
2012 WL 774995 (S.D. Miss.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Gulf Publishing Co., Inc., v. Lee,*
434 So. 2d 687, 694 (Miss. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Hill v. Church of Scientology of Toronto,*
[1995] 2 S.C.R. 1130 (July 20, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13, 15

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770, 773,74 (fn. 3)(1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Meridian Star v. Williams,*
549 So. 2d 1332, 1334 (Miss. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Newson v. Henry,*
443 So. 2d 817, 824 (Miss. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

*New York Times v. Sullivan,*
376 U.S. 254 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 32, 33

*Nishimatsu Construction Co., Ltd. v. Houston National Bank,*
515 F. 2d 1200, 1206 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Speed v. Scott,*
787 So. 2d 626, 632-34 (Miss. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26, 27


## STATUTES

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 7

28 U.S.C. § 4101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 10

28 U.S.C. § 4102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

28 U.S.C. § 4102 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 33

28 U.S.C. § 4102(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 14

28 U.S.C. § 4102(a)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

28 U.S.C. § 4103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 7


## OTHER AUTHORITIES

Federal Rule of Civil Procedure 55. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

Mississippi Rule of Civil Procedure 55. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Mississippi Rule of Civil Procedure 55(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nova Scotia Annotated Civil Procedure Rules Part 3,
Rule 8 and Part 7, Rule 31 . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IN THE FIFTH CIRCUIT COURT OF APPEALS

FOR THE FIFTH CIRCUIT
NO:  13-60002

TROUT POINT LODGE, LIMITED, A Nova
Scotia Limited Company; VAUGHN PERRET
and CHARLES LEARY                                          APPELLANTS

VERSUS
DOUG K. HANDSHOE                                          APPELLEE

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

---

BRIEF OF APPELLANTS, TROUT POINT LODGE,
LIMITED, A NOVA SCOTIA LIMITED COMPANY,
VAUGHN PERRET, AND CHARLES LEARY

## JURISDICTION

A.     The district court had federal question jurisdiction pursuant to  28

U.S.C. § 4101 *et seq.* (the SPEECH Act).  Appellants Trout Point Lodge, Limited,

Vaughn Perret, and Charles Leary obtained a judgment in defamation and on other

grounds against Appellee Handshoe on February 2, 2012 in the Supreme Court of

Nova Scotia, and on March 8, 2012 they enrolled the judgment in the Circuit Court

of Hancock County, Mississippi.

B.     Pursuant to 28 U.S.C. § 4103, Handshoe filed his notice of removal to the United States District Court for the Southern District of Mississippi Southern Division on March 26, 2012 (R. Vol. 1, p. 10.)

C.     On December 19, 2012 the district court entered summary judgment in favor of Handshoe (R. Vol. 6, p. 1553; R.E. 10), and on December 26, 2012 Trout Point Lodge, Perret, and Leary filed their notice of appeal to this Court.

D.     This appeal is from a final judgment that disposes of all parties' claims, except on December 27, 2012 Handshoe filed a motion in the district court to impose an appeal bond. (R. Vol. 6, p. 1556.)  That motion has not been decided.

## STATEMENT OF ISSUES FOR REVIEW

1.    Did the district court commit reversible error by denying Appellants Trout Point, Perret, and Leary's motion for summary judgment on their Canadian defamation judgment enrolled in the Mississippi state court?

2.    Did the order entered in the Supreme Court of Nova Scotia February 2, 2012 comply with the SPEECH Act so as to entitle Trout Point, Perret, and Leary to summary judgment in the district court and thereafter to enroll and execute their Canadian judgment against Handshoe, a Mississippi resident?

3.    Did the district court commit reversible error by deciding Appellants Trout Point, Perret, and Leary did not prove a case of defamation against Handshoe which would be upheld by a Mississippi court?

4.    Did the district court commit reversible error by deciding Trout Point Lodge, Perret, Leary failed to prove and the Nova Scotia court failed to find that the publications uttered by Handshoe were false and defamatory?

5.    Should the court disregard any finding of the district court not in the record before the district court?

## STATEMENT OF THE CASE

On September 1, 2011 Trout Point Lodge, Perret, Leary filed their complaint for defamation and related relief (First Amended Statement of Claim) in the Supreme Court of Nova Scotia, Canada (R. Vol. 1, p. 94; R.E. 3.)

As would have been the case in any American court, since Handshoe failed to appear or defend the defamation claim, the Nova Scotia Court entered default against him, conducted a default hearing, found the publications at issue were false and defamatory, and on February 2, 2012, entered judgment on the defamation claims against Handshoe, awarding Trout Point Lodge $75,000.00 in general damages; Vaughn Perret $100,000.00 in general damages, $50,000.00 in aggravated damages and $25,000.00 in punitive damages; and Charles Leary $100,000.00 in general damages, $50,000.00 in aggravated damages, and $25,000.00 in punitive damages, with costs in favor of Plaintiffs in the amount of $2,000.00.  (R. Vol. 1, p. 123; R.E. 4.)[1]

On March 8, 2012 Trout Point, Perret, and Leary enrolled their Canadian defamation judgment in the Circuit Court of Hancock County, Mississippi (R. Vol. 1, p. 121), and on March 26, 2012 pursuant to 28 U.S.C. § 1441, Handshoe noticed

---

[1] While the judgment provided other relief, Trout Point, Perret, and Leary seek only to execute on their money judgment.

his removal to the United States District Court for the Southern District of Mississippi, Southern Division.  (R. Vol. 1, p. 10.)

Since the parties agreed that all issues were strictly legal in nature, they conducted  no discovery but instead filed cross motions for summary judgment on the issue of whether the Canadian judgment was enforceable against Handshoe pursuant to provisions of the SPEECH Act.

On December 19, 2012 the district court entered summary judgment in favor of Handshoe and against Trout Point, Perret, and Leary finding that pursuant to the SPEECH Act, Trout Point, Perret and Leary's judgment would not have been entered against Handshoe in a Mississippi court having jurisdiction over Handshoe since Trout Point, Perret, and Leary failed to prove that Canadian defamation laws were not as protective of free speech as American laws and that the defamatory statements at issue were false.  (R. Vol. 6, p. 1553; R.E. 9; R. Vol. 6, p. 1534; R.E. 8.)

On December 26, 2012, Tout Point, Perret, and Leary perfected their appeal to this Court by filing their Notice of Appeal.  (R. 6, p. 1554; R.E. 2.)

## STATEMENT OF FACTS RELEVANT
## TO THE ISSUES SUBMITTED FOR REVIEW

During 2011 Handshoe published an almost never ending stream of false and defamatory statements concerning Trout Point, Perret, Leary and on Handshoe's blog known as *"Slabbed"* as well as elsewhere across the internet.  Perret and

Leary are American citizens living in Nova Scotia where they own and operate an internationally respected lodge. (R. Vol. 1, p. 228 to R. Vol. 3 p. 520.)

In the Canadian litigation Trout Point, Perret, and Leary alleged, and the Nova Scotia Court found, that Handshoe published false and defamatory statements that Trout Point, Perret, and Leary were involved in corruption, fraud, money laundering, and "pay to play" schemes involving former Jefferson Parrish, Louisiana President Aaron Broussard and his administration and other matters not related to Aaron Broussard. (First Amended Statement of Claim – R. Vol. 1, p. 94; R.E. 4.)

Handshoe falsely published that Trout Point, Perret, and Leary had misled investors and Canadian court officials concerning their ownership of a business they had in Canada. Handshoe falsely accused Leary of perjury. (R. Vol. 1, pp. 95-115; R.E. 4.)

Handshoe also falsely published that Trout Point Lodge suffered a series of business failures, was on the verge of bankruptcy, and was owned by unscrupulous persons in Perret and Leary. (R. Vol. 1, pp. 95-115; R.E. 4.)

Handshoe was personally served in Mississippi with the Nova Scotia Summons and First Amended Statement of Claim (Complaint), and he chose not to appear or defend. (R. Vol. 1, pp. 86-89; R. Vol. 1, pp. 129-131.)

The Nova Scotia court held Handshoe in default, and as would be done in a U.S. federal or state court, the Canadian court then conducted a hearing on damages at which Trout Point, Perret, and Leary testified under oath about the numerous false and defamatory statements published by Handshoe and their damages.  (Supreme Court of Nova Scotia Decision - R. Vol. 1, pp127-184.)

On February 1, 2012 after hearing all of the evidence, the Nova Scotia Court entered its fifty-nine page opinion (Decision) outlining in great detail the instances of false and defamatory publications at issue and awarded Trout Point Lodge $75,000.00 in general damages; Vaughn Perret $100,000.00 in general damages, $50,000.00 in aggravated damages and $25,000.00 in punitive damages; and Charles Leary $100,000.00 in general damages, $50,000.00 in aggravated damages, and $25,000.00 in punitive damages, with costs in favor of Plaintiffs in the amount of $2,000.00.  (R. Vo. 1, pp. 127-184.)

On February 2, 2012 the Court entered its order (final judgment) against Handshoe. (R. Vol. 1, p. 123; R.E. 5.)

On March 3, 2012, Trout Point, Perret, and Leary enrolled their Canadian judgment in the Circuit Court of Hancock County, Mississippi against Handshoe. (R. Vol. 1, p. 121.)  Pursuant to 28 U.S §§1441 and 4103, on March 26, 2012 Handshoe filed his notice of removal in the United States District Court for the Southern District of Mississippi, Southern Division.  (R. Vol. 1, p. 10.)

After considering cross motions for summary judgment, the district court found that Trout Point, Perret, and Leary did not prove Canadian laws were not as protective as American laws and Handshoe's publications were false. As a result, the Canadian defamation judgment was unenforceable under Mississippi law and the SPEECH Act. The district court therefore on December 19, 2012 entered judgment in favor of Handshoe and against Trout Point, Perret, and Leary. (R. Vol. 6, p. 1553.)

On December 26, 2012 Trout Point, Perret, and Leary filed their Notice of Appeal to this Court. (R. Vol. 6, p. 1553; R.E. 2.)

## SUMMARY OF THE ARGUMENT

The SPEECH Act provides that an American citizen against whom a defamation judgment is taken in a foreign court can require the defamation plaintiff prior to executing his judgment in the American citizen's state of residence to show one of two things:

1.    That the laws of Nova Scotia as applied there "in that case" are as protective of free speech as are the laws of the United States; or in the alternative,

2.    That the defamation judgment would have been entered against the American defendant in the courts of his state of residence, which is Mississippi.

Trout Point, Perret, and Leary proved both.

While Canada law generally does not require the defamation plaintiff to prove falsity, Trout Point, Perret, and Leary assumed burdens they were not required to assume. They proved not only that the publications at issue were false and defamatory. They also proved they were published in reckless disregard for the truth. While Canada has not adopted the *New York Times v. Sullivan,* 376 U.S. 254 (1964) reckless disregard for the truth requirement imposed upon public figure defamation plaintiffs and imposed upon non-public figure plaintiffs seeking punitive damages, Trout Point, Perret, and Leary nonetheless met *New York Times v. Sullivan* constitutional malice standard by showing the publications at issue were uttered in reckless disregard for the truth. Therefore, they actually met a higher burden of proof than they would have had to meet in an American court to obtain damages for loss of reputation and emotional distress, and the fact that Canada has not adopted *New York Times v. Sullivan* is irrelevant since in the Nova Scotia proceeding that malice standard was met.

After he was personally served with process, Handshoe refused to enter his appearance or defend the case. Nova Scotia has adopted rules of civil procedure strikingly similar to Federal Rule of Civil Procedure 55 and Mississippi Rule of Civil Procedure 55 regarding default judgments. In Nova Scotia, as would have been the case in an American court, the allegations of falsity and defamation were taken as confessed due to Handshoe's default. The Nova Scotia court, as would

have been done in an American court, particularly a Mississippi court, then held a default hearing at which time Trout Point, Perret, and Leary presented overwhelming evidence of falsity, defamation, and damages.

Nonetheless, the district court overlooked or disregarded on cross motions for summary judgment the numerous allegations of falsity and defamation by Trout Point, Perret, and Leary and overlooked the Nova Scotia court's multiple findings that the numerous publications at issue were both false and defamatory.

The district court cited facts not before it in the record which had no bearing on the entry of summary judgment for Handshoe, but these findings should be disregarded on appeal since Trout Point, Perret, and Leary never had the opportunity to address or rebut them.

Summary judgment in favor of Handshoe should be reversed and the case remanded to the district court for entry of summary judgment in favor of Trout Point, Perret, and Leary.

## ARGUMENT

### THE SPEECH ACT.

Handshoe removed the motion to enroll the judgment against him pursuant to the Securing the Protection of Our Enduring and Established Constitutional Heritage Act ("SPEECH Act") codified at 28 U.S.C. § 4101, *et seq.* which Congress legislated after it found that defamation plaintiffs were obtaining

judgments in foreign countries against American citizens in cases that violated First Amendment considerations recognized by United States federal and state courts. (R. Vol. 1, p. 10.)

The SPEECH Act was enacted to address "libel tourism," sometimes called "libel terrorism", where a plaintiff forum shops a defamation action. Perhaps the most prominent case of libel tourism prior to the SPEECH Act involved the Saudi Arabian citizen Khalid bin Mahfouz, and two members of his family who sued Rachel Ehrenfeld, an Israeli born writer and United States citizen, over her 2003 book on terrorist financing, *Funding Evil*, which asserted that Mahfouz and his family provided financial support to Islamic terrorist groups. *See Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830 (N.Y., 2007). The Mahfouz plaintiffs obtained a default judgment against Ehrenfeld in the United Kingdom. *Id.* at 833.

The SPEECH Act provides in pertinent part:

(a)    First Amendment considerations. --

(1) In general. --  Notwithstanding any other provision of Federal or State law, a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that –

(A)  the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press **in that case** as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located; or

> (B)     even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the first amendment to the Constitution of the United States and the constitution and law of the State, the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located.

> (2)     Burden of establishing application of defamation laws. – The party seeking recognition or enforcement of the foreign judgment shall bear the burden of making the showings required under subparagraph (A) or (B).

28 U.S.C. § 4102(a)[2]  (Emphasis added.)

## CANADIAN PROTECTION OF FREE SPEECH.

The Nova Scotia Court's decision cited and relied upon several Canadian decisions that dealt with defamation and the right of free speech.  One of those was *Hill v. Church of Scientology of Toronto,* [1995] 2 S.C.R. 1130 (July 20, 1995), a leading Canadian Supreme Court defamation case, which held:

> Much has been written of the great importance of free speech. Without this freedom to express ideas and to criticize the operation of institutions and the conduct of individual members of government agencies, democratic forms of government would wither and die.  See, for example, *Reference re Alberta Statutes,* [1938] S.C.R. 100, at p. 133; *Switzman v. Elbling,* [1957] S.C.R. 285, at p. 306; and *Boucher*

---

[2] This two part test is in the disjunctive.  The second part requires an analysis of Mississippi law since Trout Point, Perret, and Leary enrolled the judgment against Handshoe in Hancock County, Mississippi.  The "domestic court" referred to in 28 U.S.C. § 1402(a)(B) is therefore the Hancock County Mississippi Circuit Court.

*v. The King,* [1951] S.C.R. 265, at p. 326. More recently, in *Edmonton Journal, supra,* at p. 1336, it was said:

> It is difficult to imagine a guaranteed right more important to a democratic society than freedom of expression. Indeed a democracy cannot exist without that freedom to express new ideas and to put forward opinions about the functioning of public institutions. The concept of free and uninhibited speech permeates all truly democratic societies and institutions. The vital importance of the concept cannot be over-emphasized.

*Hill,* [1995] 2 S.C.R. 1130, at ¶ 101.

In *Hill* the Canada Supreme Court refused to adopt the landmark American decision of *New York Times v. Sullivan,* 376 U.S. 254 (1964), which requires the public figure defamation plaintiff to prove constitutional malice, or publication with reckless disregard for the truth. *Hill,* [1995] 2 S.C.R. 1130, at ¶ 137. In the instant case, however, the difference between Canadian and American law is moot since Trout Point Lodge, Perret, and Leary are not public figures and since "in that [Nova Scotia] case" pursuant to 28 U.S.C. § 4102(a)(1)(A) they proved Handshoe made the publications in reckless disregard for their truth. Furthermore, had the case been decided in Mississippi, the defamation judgment would likewise have been entered.

## THE NOVA SCOTIA PROCEEDING.

### Default Judgment Procedure.

After being personally served with process in Mississippi, Defendant chose not to make an appearance to defend the allegations against him in Canada. (R. Vol. 1, pp. 86-89; R.Vol. 1, pp. 129-131.)   If Handshoe had been sued in Mississippi and then defaulted, a default judgment would have been entered against him precisely as it was in Nova Scotia.  Upon his default, the facts "in that case" 28 U.S.C. § 4102(a)(1)(A) were resolved against him, including the facts concerning liability, falsity, reckless disregard for truth, injury to reputations, and the extent and amount of  damages.[3]

Nova Scotia has adopted Annotated Civil Procedure Rules Part 3, Rule 8 and Part 7, Rule 31 concerning default judgments. They are strikingly similar to Federal Rule of Civil Procedure and Mississippi Rule of Civil Procedure 55.[4]

If Defendant were defending this defamation case in a Mississippi court, the default procedure would have been as follows:

> (b) Judgment. In all cases the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action,

---

[3] 28 U.S.C. § 4102 (a)(1)(A) does not require the foreign country's defamation laws to be as protective as U.S. laws.  The United States has the most protective laws in the world.  Instead, the SPEECH Act requires only that the laws of the foreign country are as protective "in that case", i.e. the case here in Nova Scotia against Handshoe.

[4] See R. Vol. 5, p. 1040 for a copy of these Nova Scotia default judgment rules.

he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application; however, judgment by default may be entered by the court on the day the case is set for trial without such three days' notice. If in order to enable the court to enter judgment or to carry it into effect it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing with our without a jury, in the court's discretion, or order such references as it deems necessary and proper.

Mississippi Rule of Civil Procedure 55(b).

The Supreme Court of Nova Scotia conducted the default judgment hearing on assessment of damages. (R. Vol. 1, p.p. 129-131.) On January 30, 2012 the Canadian court found it had jurisdiction, heard testimony, and retired until the next morning to consider the evidence. On January 31, 2012 the Court announced it had reviewed the proof, including the two volume Hearing Book Exhibits for Damages Assessment Hearing (R. Vol. 1, p. 86 - R. Vol. 3, p. 524.) On February 1, 2012 the Court dictated into the Record its fifty-nine page Decision, which analyzed numerous landmark Canadian defamation cases against the unrebutted proof in the record, including *Hill v. Church of Scientology of Toronto*, [1995] 2 S.C.R. 1130 (July 20, 1995) which held:

Malice is commonly understood, in the popular sense, as sprite or ill-will. However, it also includes, as Dickson J. (as he then was) pointed out in dissent in *Cherneskey, supra*, at p. 1099, "any indirect motive or ulterior purpose" that conflicts with the sense of duty or the mutual interest which the occasion created.

> See, also, *Taylor v. Despard*, [1956] O.R. 963 (CA). Malice may also be established by showing that the defendant spoke dishonestly, or in knowing or **reckless disregard for the truth**. See *McLouglin, supra*, at pp. 323-24, and *Netupsky v. Craig*, [1973] S.C.R. 55, at pp. 61-62.

(Emphasis added.)

After default was entered against Handshoe, the Nova Scotia court conducted a hearing and specifically found the publications at issue to be false, "unfounded", and malicious misrepresentations of fact and therefore defamatory. (R. Vol. 1, pp. 131, 172-178.)

"If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true". *Capitol One Services, Inc. v. C.J. Rawls,* 904 So. 2d 1010, 1018-19 (Miss. 2004). The district court for the Southern District of Mississippi has specifically applied this holding against a defamation defendant placed in default for failure to answer or contest the plaintiff's defamation claim. The recent decision of *Gamboa v. Grace Paint Co., Inc.*, 2012 WL 774995 (S.D. Miss.), held that when a defamation defendant is in default and the plaintiff moves for default judgment, the Court accepts the pleaded facts, including those concerning falsity, as true.[5]

---

[5] The district court should have found falsity to be confessed by Handshoe as did the *Gamboa* court.

In *Gamboa*, the plaintiff alleged in her complaint that she was a married woman and the defendant called her a nymphomaniac in the presence of other workers and that she had flirted with him. The district court found these words to be defamatory *per se*, found that the defendant was in default for not contesting and defending the Complaint, found the defamatory allegations to be proven since they were not contested (including the pleading of falsity), and entered default judgment against the defendant of actual damages totaling $5,200.00 as well as punitive damages. Thus the *Gamboa* court granted a final judgment to a plaintiff in defamation, and the plaintiff was not required to prove falsity because it was a default judgment. The court also held: "It should be noted that the Court must assume the veracity of the pleaded facts due to the default." *Id.* footnote 5.

Attempts by a defendant to escape the effects of his default should be strictly circumscribed. He should not be given the opportunity to litigate what has already been considered admitted in law." *Nishimatsu Construction Co., Ltd. v. Houston National Bank,* 515 F. 2d 1200, 1206 (5th Cir. 1975).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact by judgment …. *Id.*[6]

---

[6] Canada and Mississippi are in comity in enforcing each other's judgments, even default judgments, and even default judgments against Mississippi residents contesting Canada's jurisdiction. *Department of Human Services v. Shelnut,* 772 So. 2d 1041, 1043-47 (Miss. 2000).

The district court's summary judgment in favor of Handshoe hinges entirely upon the faulty premise that Trout Point, Perret, and Leary failed to prove the falsity of the publications at issue.  The district court completely ignored the *res judicata* effect of the default judgment, the admitted allegations of the First Amended Statement of Claim, the witnesses' proof of falsity and defamation made on the record in the default hearing, and the Nova Scotia court's findings of falsity and defamation.  The Nova Scotia default judgment hearing was conducted as it would have been conducted in any U.S. federal district court or any Mississippi trial court.   If anything, the Nova Scotia court heard overwhelming evidence of falsity, reckless disregard for the truth, and damages which it did not have to hear due to Handshoe's default.  The First Amended Complaint's allegations of falsity and proof of falsity at the default judgment hearing were, as a matter of law, deemed to be admitted even though they were independently proved.


Allegations and Proof of Falsity and Defamation.


In their First Amended Statement of Claim Trout Point, Perret, and Leary alleged they had been misidentified in the Jefferson Parish, Louisiana political corruption scandal and misidentified as Aaron Broussard's business partner and

were involved in "fraud, kickback schemes, and money laundering". (First Amended Statement of Claim, ¶12 – R. Vol. 1, p. 95.)

In paragraph 18 Trout Point, Perret, and Leary again alleged the publications were false and defamatory. (First Amended Statement of Claim, ¶18 – R. Vol. 1, p. 96.)

The Richard Rainey story reported on by Defendant concerning the Canadian Ethics Board was false. (First Amended Statement of Claim, ¶33 – R. Vol. 1, pp. 98-99.)

At paragraph 113 Trout Point, Perret, and Leary allege "Defendant's publication were replete with inaccuracies and an apparent inattention to basic ethics and duties to check facts before publishing". (First Amended Statement of Claim, ¶113 – R. Vol. 1, p. 110.)

At paragraph 115 of the First Amended Statement of Claim, Trout Point, Perret, and Leary alleged that "Defendant's false publications held them up to public contempt and ridicule". (First Amended Statement of Claim, ¶115 – R. Vol. 1, p. 100.)

At paragraph 116 of their First Amended Statement of Claim, Trout Point, Perret, and Leary alleged Defendant published his defamatory statements "without caring if the content…. was true or false." (First Amended Statement of Claim, ¶116 – R. Vol. 1, p. 111.)

At paragraph 130 of the First Amended Statement of Claim, Trout Point, Perret, and Leary alleged the publications at issue were " falsehoods". (First Amended Statement of Claim, ¶130 – R. Vol. 1, p. 113.)

At paragraph 143 of their First Amended Statement of Claim, Trout Point, Perret, and Leary went so far as to allege the Defendant had lied about them. (First Amended Statement of Claim, ¶143 – R. Vol. 1, 115.)

Findings by the Court of Falsity and Defamation.

After hearing all of the evidence, the Nova Scotia Supreme Court dictated into the record a fifty-nine page opinion which, in part, held:

> The defamatory comments originated with a news story which was published in the Times-Picayune newspaper in Louisiana about Jefferson Parish President Aaron Broussard being involved in a political corruption scandal. The plaintiffs were erroneously identified as being connected with Mr. Broussard in a business venture and Mr. Broussard was named in error as owning Trout Point Lodge. The allegations against him are kickback schemes, money laundering and fraud while in his office as Parish President.
>
> The defamatory comments later included claims that Trout Point Lodge, Mr. Leary and Mr. Perret had misled ACOA and that Mr. Leary committed perjury in litigation with ACOA. The defamation continued with statements that Trout Point Lodge was losing business or going bankrupt because of the investigation of Mr. Broussard and his inability to continue to support it. Also there were claims that Charles Leary and Vaughn Perret had been involved in a series of businesses which failed and

are con men.   The statements also contained anti-gay rhetoric and homophobic comments.

After the original story was retracted by the Louisiana newspaper that published it Mr. Handshoe made statements that Mr. Leary and Mr. Perret had improperly influenced it to retract the story.   He also said that Mr. Leary and Mr. Perret were improperly using the legal system by commencing the defamation action….

(R. Vol. 1, pp. 130-132.)

\* \* \* \*

On August 15th, 2011 the blog refers to "a Trout Point Lodge Jefferson Parish political corruption scandal update" linking Trout Point Lodge with the corruption scandal involving Aaron Broussard.   In that same blog he refers to Charles Leary and Vaughn Perret in the context of "by reporter, get a good story."

On August 16th his blog said that he was meticulously laying down "the trail of scams and political corruption that leads to Nova Scotia and Trout Point Lodge."

After being served with the Notice of Action further defamatory comments were made.   On August 18th he wrote,

> "First class bitches, common thugs or just plain old morons."

He also refers to the "elite fraternity of crooks and miscreants" who have sued him.   On August 24th, 2011 he referred to "political wrongdoing involving Leary and Perret in Canada and it had nothing to do with Broussard *per se*."

(R. Vol. 1, p. 137.)

In addition, materials were submitted to the court which were testified to by Charles Leary.   These included

defamatory comments made after the Louisiana newspaper printed a retraction of the story. They include references to a cover-up of a crime and dirty secrets April 20th, 2011 that Charles Leary and Vaughn Perret and others were "bag holders" for Aaron Broussard and the purported owners of Trout Point Lodge. That same blog referred to the fleecing of investors in Trout Point Lodge by Mr. Broussard and his close connection to Mr. Leary and Mr. Perret. It also refers to Charles Leary as a liar and a perjurer in the litigation with ACOA. And that blog was April 26, 2011.

(R. Vol. 1, p. 136.)[7]

* * * *

He continues to make accusations of fraud against them and in bilking local contractors. He refers to "the chances Trout Point Lodge will be bankrupt within a year" and he said that on August 30th, 2011. In the same blog he refers to the "nefarious practices" of Charles Leary and Vaughn Perret. He refers to them being involved in money laundering. He calls them "grifters" and "grafters." He accuses them of fabricating positive reviews of Trout Point Lodge. Ultimately he links them with organized crime.

There are many, many more blogs which contained defamatory materials such as this which are included in the materials filed with the Court on January 30th.

(R. Vol. 1, p. 138.)

---

[7] All the false and defamatory publications are far too numerous to mention here, but they may be reviewed in the evidence submitted to the Nova Scotia court. (R. Vol. 1, p. 186-Vol. 3, p. 524.)

The Nova Scotia Court found "the Plaintiffs were erroneously identified as being connected with Mr. Broussard in a business venture and Mr. Broussard was named in error as owning Trout Point Lodge." (R. Vol. 1, p. 131.)

The Nova Scotia Court found "[t]he defendant is persistent in his statements that Trout Point Lodge is somehow connected to the Jefferson Parish corruption scandal and has benefitted financially from funds illegally obtained. The defendant knows that the original story linking Mr. Broussard with Trout Point has been retracted and an apology published. In the face of this the defamatory comments continued." (R. Vol. 1, p. 172.)

The Nova Scotia Court found "[t]hese **unfounded statements** about the character, business dealings and financial acumen of these business men merit an award of damages for each in the amount of $100,000.00." (R. Vol. 1, pp. 174-175.) (Emphasis added.)

The Nova Scotia Court found "I conclude the following factors in this case call for such an award here. The original story was retracted by the Times-Picayune in New Orleans, nevertheless Mr. Handshoe continued to spread the defamation. …." (R. Vol. 1, p. 175.)

The Nova Scotia Court found "He commented on other business ventures of the plaintiffs and other legal matters in which they were involved,

**misrepresenting facts** and attacking the reputations with statements that they were dishonest, fraudsters, and liars." (R. Vol. 1, p. 176.) (Emphasis added.)

The Nova Scotia Court also found 'All of this is outrageous conduct **in the face of true facts about the plaintiffs**.' (R. Vol. 1, p. 176.) (Emphasis added.)

Based on the Nova Scotia Court's analysis of the facts and law, it determined that judgment would be entered in favor of Trout Point, Perret, and Leary against Handshoe. The following day, the Court dictated its Decision, and judgment was entered in favor of the Plaintiffs against Defendant as follows:

> The Defendant Douglas K [sic] Handshoe of Mississippi as a joint and concurrent tortfeasor shall pay to the plaintiffs the following damages:
>
> - to Trout Point Lodge: $75,000 in general damages
> - to Vaughan [sic] Perret, $100,000 in general damages; $50,000 in aggravated damages; and $25,000.00 in punitive damages;
> - to Charles Leary, $100,000 in general damages; $50,000 in aggravated damages; and $25,000 in punitive damages; as well as costs of $2,000.

(R. Vol. 1, p. 123; R.E. 5.)

Before entering judgment, the Nova Scotia court repeatedly found the publications involving Aaron Broussard and other publications having nothing to do with Aaron Broussard to be *false and defamatory*. In spite of this overwhelming quantum of proof, and despite the effect of the default, the district court held in error that falsity had not been proved in Nova Scotia.

MISSISSIPPI DEFAMATION.

*Fulton v. Mississippi Publisher's Corp.*, 498 So. 2d 1215, 1216 (Miss. 1986)

sets forth the elements of a Mississippi defamation claim,[8] which are:

> A claim of defamation requires that the plaintiff establish: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting to at least negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Trout Point, Perret, and Leary clearly showed in briefing their motion for summary judgment that they both alleged and proved falsity as a matter of fact in the Nova Scotia proceeding and thereby met all the elements of defamation, including the first element of a Mississippi defamation claim. (R. Vol. 3, p. 359; R. Vol. 5, pp. 1032-1304; R. Vol. 6, pp. 1318-1336.)

Pursuant to Mississippi law a publication is defamatory if it "tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Gulf Publishing Co., Inc., v. Lee,* 434 So. 2d 687, 694 (Miss. 1983).

Pursuant to Mississippi law the question of whether a publication is defamatory is a legal question to be determined by the court. *Funderburk v.*

---

[8] The only element the district court found not to be proved was falsity.

*Johnson,* 935 So. 2d 1084, 1102 (Miss. App. 2006). The Nova Scotia court determined the publications at issue were defamatory.

The publications at issue falsely charged Trout Point, Perret, and Leary with crimes of moral turpitude (perjury, fraud, corruption) and with Trout Point being financially unstable and bankrupt, therefore, those publications are, under Mississippi law, defamatory *per se.  See Speed v. Scott,* 787 So. 2d 626, 632-34 (Miss. 2001).

Pursuant to Mississippi law words are defamatory and actionable *per se* if they lessen a parties' public esteem or lower him in the confidence of the community. *Meridian Star v. Williams,* 549 So. 2d 1332, 1334 (Miss. 1989).

Trout Point, Perret, and Leary are thus entitled to recover for their loss of reputations and for emotional distress, as the Nova Scotia Court appropriately decided. *See Id.* at 632, 635.

Pursuant to Mississippi law Trout Point, Perret, and Leary are also entitled to recover punitive damages, whether or not they proved damages to reputations (which they did), since the publications at issue were defamatory *per se* and were made with malice and reckless disregard for the truth.

> [W]here the defamation complained of is actionable per se, it is generally held that punitive damages may be awarded even though the amount of actual damages is neither found nor shown, for in such a case the requirement of a showing of actual damages is satisfied by the presumption of injury which arises from a

> showing of libel or slander that is actionable per se.  But where the defamation is not actionable per se, punitive damages cannot be allowed unless either general or special damage is shown.[9]

*Newson v. Henry,* 443 So. 2d 817, 824 (Miss. 1984).

See also *Speed*, 634.

Pursuant to Mississippi law when a party is falsely accused of committing an act of major or serious character, the defamation claim is actionable *per se* without proof of special damage.  *Speed,* 634.

The Nova Scotia Court correctly awarded punitive damages due to Handshoe's reckless disregard for the truth, i.e., his malice toward Plaintiffs and because the publications at issue were defamatory *per se.*  (R. Vol. 1, pp. 123, 131, and 172-178.)

This is not a case where Handshoe merely negligently published defamatory statements.   As the Nova Scotia Court properly found, Handshoe repeatedly hammered away during the year of 2011at Trout Point, Perret, and Leary with total disregard for the truth which lead the Nova Scotia Court to decide liability and damages as an American court would have, including Mississippi courts.  That is, the words published are defamatory, Trout Point, Perret, and Leary are entitled to recover for their loss of reputation, emotional distress, and  punitive damages so as

---

[9] Plaintiffs proved special damages.  (R. Vol. 1, pp. 171-78.)

to deter Handshoe from committing the same egregious conduct in the future. Canadian law, as applied by the Nova Scotia Court, is in perfect harmony with American defamation law, including Mississippi's defamation law, as viewed through the prism of United States First Amendment free speech protection. Handshoe's gross misbehavior is not protected speech. Any American court faced with this case's facts would be free, if not compelled, to find Handshoe's published words concerning Trout Point, Perret, and Leary are defamatory, thus entitling them to the Nova Scotia Judgment for the damages.

Since Trout Point, Perret, and Leary assumed the burdens of proving falsity of the publications in issue and the burden of proving reckless disregard for the truth by Handshoe, the laws of Canada relating to the Nova Scotia proceeding were identical to U.S. and Mississippi. If Trout Point, Perret, and Leary here had sued Handshoe in Mississippi, alleged and proved falsity and reckless disregard for the truth, judgment would have been entered here just as in a Canadian court under Canadian law for loss of reputation, emotional distress and punitive damages.

It bears repeating that since Handsoe was in default, all allegations against him, including falsity and injury to reputation, were deemed to be proven as admitted; yet Trout Point, Perret, and Leary went further and alleged and proved that the publications at issue were false and defamatory. The allegations and proof

were not necessary in Nova Scotia or particularly Mississippi state court due to Handshoe's default.

## TO THE EXTENT THE DISTRICT COURT BASED ITS OPINION UPON FACTS OR ALLEGED FACTS OUTSIDE THE RECORD BEFORE IT, THAT PART OF THE DECISION SHOULD BE DISREGARDED ON APPEAL.

Pursuant to Federal Rule of Civil Procedure 56 there need be no authority cited for the proposition that the district court was bound by the facts and arguments made on the record before it on cross motions for summary judgment. To the extent the district court relied on extrajudicial proof to enter summary judgment in favor of Handshoe, that part of the district court's decision should be disregarded on appeal.

The district court referred to Slabbed publications not in the record after the close of briefing of the cross motions for summary judgment which was September 11, 2012.  (R. Vol. 6, p. 1367.)

The district court found "during 2012 alone, there have been approximately 60 publications on 'Slabbed' that reference the Plaintiffs." (R. Vol. 6, p. 1538, Fn. 9.) The Nova Scotia defamation action was filed September 1, 2011, and the Nova Scotia court entered judgment against Handshoe February 2, 2012.  (R. Vol. 1, p. 123; R.E. 4.)  Therefore if the district court was relying  publications by Handshoe or Slabbed during 2012, it was relying on things outside the record on cross

motions for summary judgment in a case involving only publications prior to entry of the Canadian judgment on February 2, 2012.

The district court found "Moreover, the Court is aware there is a civil action pending the United States District Court for the Eastern District of Louisiana against Broussard and others in which it is alleged that Trout Point, Ltd. was one of many coconspirators." (R. Vol. 6, 1548, Fn. 15.)  Trout Point, Perret, and Leary were not able to address this point since it was not in the record and only mentioned by the court after briefing on the cross motions for summary judgment was finished.  (R. Vol. 6, p. 15, Fn. 15.)

The district court made other references to Handshoe or Slabbed publications not contained in the record made by the district court in its order.

The Court should disregard these references by the district court in its order entering summary judgment since they were not in the record and their presence or absence in the record is irrelevant since they have no bearing whatsoever on allegations and  proof of falsity and the findings by the Nova Scotia court of falsity and defamation.  Trout Point, Perret, and Leary proved and the Nova Scotia court found numerous statements concerning Aaron Broussard and other unrelated matters to be false and defamatory.  The district court did not explain its conclusion that falsity was not proved; it simply erroneously so found.

Furthermore, the court's reliance, or at least reference to these matters is strictly limited to false and defamatory publications concerning Aaron Broussard. There are numerous other false and defamatory statements in the Nova Scotia case directed to Trout Point, Perret, and Leary having nothing to do with Broussard, for example, perjury (R. Vol. 1, pp. 130-3), bankruptcy, involvement in a series of business failures, con men (R. Vol. 1, pp. 130-32), elite fraternity of crooks and miscreants (R. Vol. 1, p. 137) liar (R. Vol. 1, p. 136), and organized crime. (R. Vol. 1, p. 138).

Under the Mississippi law, each of these allegations, including specific allegations about the role of Leary and Perret in Broussard's alleged crimes, and allegations not connected to Broussard was actionable *per se*. Each gives rise to its own cause of action. Beyond this, each instance of fresh publication in a new form and context by Handshoe was actionable. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 773,74 (Fn. 3)(1984). "It is the general rule that each communication of same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." *Id.*

The district court's references to matters outside the record dealt only with Aaron Broussard and were not supported by the record developed on cross motions for summary judgment.

## CONCLUSION

Handshoe's publications falsely accused Trout Point, Perret, and Leary of being deeply involved with the Aaron Broussard Jefferson Parrish, Louisiana scandals, of money laundering, of being Broussard's co-conspirators, of being corrupt – bad men, crimes of moral turpitude and which lowered their standing in the community.    In many other publications, Handshoe falsely accused Trout Point, Perret, and Leary of other defamatory matters completely unconnected to Aaron Broussard or his scandals such as that they were liars, that they committed perjury, that they were conmen, that their business was financially unsound, and that their business was bankrupt.    Both the 2011 publications involving Broussard and those which did not are too numerous to detail in this brief, but they are found in the evidence presented to the Nova Scotia court and in the court's findings.    All of these publications were uttered with reckless disregard for the truth thereby meeting the *New York Times* malice standard.    Even though default had been entered against Handshoe for his failure to appear and defend after having been personally served, and the allegations of their defamation claims taken as admitted, nonetheless, Trout Point, Perret, and Leary met two burdens in Canada they did not have to meet there.    First, they alleged and the court found the publications at issue were false.    Secondly, they alleged and the Nova Scotia court found that the publications were uttered in reckless disregard for the truth thereby meeting the

*New York Times* reckless disregard for the truth malice standard. Therefore, Trout Point, Perret, and Leary went forward and met both prongs of 28 U.S.C. § 4102 (The SPEECH Act). While Canadian law does not require the defamation plaintiff to prove falsity, Trout Point, Perret, and Leary did, and while Canadian law has not adopted the *New York Times* malice standard, Trout Point, Perret, and Leary met that standard, and therefore the Canadian law applied in the Nova Scotia court ("in that case" – 28 U.S.C. § 4102(a)) afforded the same First Amendment free speech protection to Handshoe as he would have been afforded in an American court. The district court in this case intimated that the publications defamed Trout Point, Perret, and Leary; but the district court erroneously found despite literal volumes of proof to the contrary, that Trout Point, Perret and Leary failed to prove the falsity of the publications.

While the district court refers to matters not contained in the record developed on cross motions for summary judgment, those findings had no bearing on the court's decision or on the clear proof of defamation claims and its damages. Instead, the court's summary judgment in favor of Handshoe hinged entirely upon the erroneous finding that Trout Point, Perret, and Leary failed to prove the Mississippi requisite defamation element of falsity.

Therefore, the Court should reverse and render the summary judgment in favor of Handshoe and remand the case for entry of summary judgment in favor of Trout Point, Perret, and Leary.

Respectfully submitted, this the 20th day of February, 2013.

Trout Point Lodge, Limited, Vaughn Perret and Charles Leary

By:    S/  Henry Laird
       Henry Laird,
       Mississippi Bar No. 1774

Henry Laird (MSB No. 1774)
Email:  hlaird@joneswalker.com
JONES WALKER
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS  39502
Telephone: (228) 864-3094
Facsimile: (228) 864-0516

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief of Appellants has been filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit via the court's CM/ECF filing system which sent notification of same to the following:

<u>Counsel for Appellee</u>

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi  39466
Email:  ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA  70433
Email:  mail@truittlaw.com

This the 20th day of February, 2013.

s/ Henry Laird
Henry Laird

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1.    Exclusive of the exempted portions in 5th Cir. R. 32.2.7(b)(3), the brief contains

    A.    This brief contains 10,166 words, including parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.    The brief has been preparedin proportionally spaced typeface using:

    Software Name and Version:    Microsoft Word 2003

    in (typeface name and font size):    Times New Roman Font 14.

3.    If the court so requests, the undersigned will provide an electronic version of the brief and/or a copy of the word or line printout.

4.    The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits 5th Cir. R. 32.2.7, may result in the court's striking the brief and imposing sanctions against the person signing the brief.

                s/  Henry Laird
                Henry Laird