# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
### NO: 13-60002

**TROUT POINT LODGE, LIMITED, A Nova
Scotia Limited Company; VAUGHN PERRET
and CHARLES LEARY**                          **APPELLANTS**

**VERSUS**
**DOUG K. HANDSHOE**                          **APPELLEE**

---

## RECORD EXCERPTS

---

Henry Laird (MSB No. 1774)
Email:  hlaird@joneswalker.com
JONES WALKER
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS  39502
Telephone: (228) 864-3094
Facsimile: (228) 864-0516

# TABLE OF CONTENTS

Docket Sheet (R. Vol. 1, pp. 1-8) ...................................................................1

Notice of Appeal (R. Vol. 6, pp. 1554-1555..................................................2

Order Denying Plaintiffs' Motion for Summary Judgment and
Granting Defendant's Motion for Summary Judgment (R. Vol. 6, pp. 1534-1552)..........................3

Judgment (R. Vol. 6, p. 1553).........................................................................4

First Amended Statement of Claim (R. Vol. 1, pp. 94-117)..............................5

Supreme Court of Nova Scotia Order for Judgment Against
Douglas K. Handshoe (R. Vol. 1, p. 120) .......................................................6

Supreme Court of Nova Scotia Order (R. Vol. 1, pp. 118-119) .......................7

1

APPEAL, REMOVAL, JURY, JMR, CLOSED

**U.S. District Court**
**Southern District of Mississippi (Southern)**
**CIVIL DOCKET FOR CASE #: 1:12-cv-00090-LG-JMR**

Trout Point Lodge, Limited et al v. Handshoe          Date Filed: 3/26/2012
Assigned to: Chief District Judge Louis Guirola, Jr.     Jury Demand: None
Referred to: Magistrate Judge John M. Roper             Nature of Suit: 320 Assault Libel &
Demand: $0                                               Slander
Lead Docket: None                                        Jurisdiction: Federal Question
Related Cases: None
Cases in other court: None
Cause: 28:1441 Notice of Removal

**Plaintiff**

------------------------

**Trout Point Lodge, Limited,** *a Nova*          represented by     **Henry F. Laird, Jr.**
*Scotia Limited Company*                                             JONES WALKER WAECHTER
                                                                     POITEVENT CARRERE &
                                                                     DENEGRE-Gulfport
                                                                     2510 14th Street, Suite 1125
                                                                     P. O. Drawer 160 (39502)
                                                                     Gulfport, MS 39501
                                                                     US
                                                                     228/864-3094
                                                                     Email: hlaird@joneswalker.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Vaughn Perret**                                represented by     **Henry F. Laird, Jr.**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Charles Leary**                                represented by     **Henry F. Laird, Jr.**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

------------------------

**Doug K. Handshoe**                             represented by     **G. Gerald Cruthird**
                                                                     G. GERALD CRUTHIRD, ATTORNEY
                                                                     P.O. Box 1056
                                                                     Picayune, MS 39466
                                                                     (601) 798-0220
                                                                     Email: ggeraldc@bellsouth.net

A TRUE COPY I HEREBY CERTIFY.
A. T. NOBLIN, CLERK
BY:
DEPUTY CLERK

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack E. Truitt - PHV**
THE TRUITT LAW FIRM, LLC
149 North New Hampshire Street
Covington, LA 70433
US
985/327-5266
Fax: 985/327-5252
Email: mail@truittlaw.com
*ATTORNEY TO BE NOTICED*

| Filing Date | # | Docket Text |
|---|---|---|
| 3/26/2012 (p.10) | 1 | NOTICE OF REMOVAL by Doug K. Handshoe from Circuit Court, Hancock County, case number 12-0103. ( Filing fee $ 350, receipt number 14643003198)<br><br>Pursuant to Rule L.U.Civ.R. 5(b): within 14 days removing party must electronically file the entire state court record as a single filing; and all parties shall, within fourteen days after the Case Management Conference, file as **separate docket items** any unresolved motions that were filed in state court which they wish to advance. (Attachments: # (1) Exhibit A - Lower Court Motion to Enroll Foreign Judgment, # (2) Exhibit B - Lower Court Notice of Removal, # (3) Civil Cover Sheet)(avm) (Entered: 3/26/2012) |
| 4/3/2012 (p.29) | 2 | State Court Record by Defendant Doug K. Handshoe (Cruthird, G.) (Entered: 4/3/2012) |
| 4/5/2012 (p.68) | 3 | MOTION for Status Conference by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 4/5/2012) |
| 4/5/2012 | | TEXT ORDER ONLY granting [3] Motion for Status Conference.A telephonic status conference will be held on April 24,2012 at 10:45am. Plaintiff to initate the conference call. Confidential memoranda must be submitted on or prior to April 16,2012. No further written order shall be issued by this Court. Signed by Magistrate Judge John M. Roper on April 5,2012 (Nicaud, Jenny) (Entered: 4/5/2012) |
| 4/5/2012 | | Set/Reset Hearings: Telephonic Status Conference set for 4/24/2012 10:45 AM before Magistrate Judge John M. Roper (Nicaud, Jenny) (Entered: 4/5/2012) |
| 4/13/2012 (p.70) | 4 | MOTION for Jack E. Truitt to Appear Pro Hac Vice *Application for Admission Pro Hac Vice* by Doug K. Handshoe (Cruthird, G.) (Entered: 4/13/2012) |
| 4/13/2012 | | TEXT ORDER ONLY granting [4] Motion to Appear Pro Hac Vice. The Court finds that the motion of Jack Truitt to appear pro hac vice on behalf of the Defendant should be granted in association with local counsel, upon payment of the appropriate fee and registration for electronic filing as required by this Court. No further written order shall be issued by this Court. Signed by Magistrate Judge John |

| | | |
|---|---|---|
| | | M. Roper on April 13,2012 (Nicaud, Jenny) (Entered: 4/13/2012) |
| 4/16/2012 | | DOCKET ANNOTATION as to #4: Motion and exhibits are filed as one main document. Exhibits should be scanned separately and docketed as properly identified attachments to the main document within the same docket entry. Attorney is directed to followthis procedure in future filings. L.U.Civ.R. 7.(b)(2). ADDITIONAL DOCKET ANNOTATION as to #4: Proposed orders are not to be electronically filed as a separate pleading or as an attachment to a pleading, but instead are to be provided to chambers by e-mail (Court's Administrative Procedures for Electronic Case Filing Sec.5.B.). (avm) (Entered: 4/16/2012) |
| 4/17/2012 | | Pro Hac Vice fee paid by Jack E Truitt, $ 100, receipt number 14643003283. (avm) (Entered: 4/17/2012) |
| 4/24/2012 | | Minute Entry for proceedings held before Magistrate Judge John M. Roper: Status Conference held on 4/24/2012. Pursuant to a conference held on this date and after discussion among the parties, the Court determined that this matter may be resolved bydispositive motion. Parties will file dispositive motions within thirty days of receipt of the official transcript of the underlying proceeding held in Nova Scotia,Canada. Parties are ordered to exchange any transcripts retained.This matter is set on a three week calendar beginning January 14,2013.The pre-trial conference will be held December 19-21,2012. (Nicaud, Jenny) (Entered: 4/24/2012) |
| 4/24/2012 | | Set/Reset Hearings: Bench Trial set for a three week calendar beginning 1/14/2013 before Chief District Judge Louis Guirola Jr. Pretrial Conference set for 12/19-21/2012 before Chief District Judge Louis Guirola Jr. (Nicaud, Jenny) (Entered: 4/24/2012) |
| 5/9/2012 (p.78) | 5 | CASE MANAGEMENT ORDER: Discovery due by 7/20/2012. Motions due by 8/3/2012. Pretrial Conference set for December 19-21, 2012 in Courtroom 806 (Gulfport) before Chief District Judge Louis Guirola Jr. Bench Trial (legal issue submitted on briefs) set for January 14, 2013 to February 1, 2013 in Courtroom 806 (Gulfport) before Chief District Judge Louis Guirola Jr. Signed by Magistrate Judge John M. Roper on 5/9/2012. (VLK) (Entered: 5/9/2012) |
| 6/20/2012 (p.83) | 6 | MOTION for Summary Judgment by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Attachments: # (1) Exhibit "1" Affidavit of Service; 1st Amended Notice of Action; 1st Amended Statement of Claim, # (2) Exhibit "2" Orderon Damages, # (3) Exhibit "3" Order for Judgment Against Douglas K. Handshoe, # (4) Exhibit "4" Motion to Enroll Foreign Judgment, # (5) Exhibit "5" Supreme Court of Nova Scotia Decision, # (6) Exhibit "6" Hearing Book Exhibits for Damages (Part 1), # (7) Exhibit "6" Hearing Book Exhibits for Damages (Part 2), # (8) Exhibit "6" Heairng Book Exhibits for Damages (Part 3), # (9) Exhibit "6" Hearing Book Exhibits for Damages (Part 4), # (10) Exhibit "6" Hearing Book Exhibits for Damages (Part 5), # (11) Exhibit "6" Hearing Book Exhibits for Damages (Part 6), # (12) Exhibit "6" Hearing Book Exhibits for Damages (Part 7), # (13) Exhibit "7" Affidavit of Charles L. Leary)(Laird, Henry) (Entered: 6/20/2012) |
| 6/20/2012 (p.525) | 7 | MEMORANDUM IN SUPPORT re [6] MOTION for Summary Judgment filed by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Attachments: # (1) |

| | | |
|---|---|---|
| | | Appendix Hill v. Church of Scientology of Toronto)(Laird, Henry) (Entered: 6/20/2012) |
| 6/27/2012 (p.616) | 8 | MOTION for Summary Judgment by Doug K. Handshoe (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4, # (5) Exhibit 5)(Truitt - PHV, Jack) (Entered: 6/27/2012) |
| 6/27/2012 | | DOCKET ANNOTATION as to #8: Memoranda in support should be filed separately and shown as a related document to the motion (Court's Administrative Procedures for Electronic Case Filing Sec. 3.A.7). Attorney is directed to file the Memorandum asa separate document and link it to the appropriate document. (avm) (Entered: 6/27/2012) |
| 6/27/2012 | | DOCKET ANNOTATION as to #8: Pursuant to Fed.R.Civ.P. Rule 84, appendix form 2 states that date, signature, address, e-mail address and telephone number are used at the conclusion of pleadings and other papers that require a signature. Main documentis undated, but the date will be construed as the date of electronic filing. Attorney is advised to follow this rule in future filings and in the re-filing of the memorandum. (avm) (Entered: 6/27/2012) |
| 6/27/2012 | | DOCKET ANNOTATION as to #8: L.U.Civ.R. 7(b)(2) requires that all supporting exhibits to a document be denominated by an exhibit letter or number and a meaningful description. Attorney is advised to follow this rule in future filings. (avm) (Entered: 6/27/2012) |
| 6/27/2012 (p.795) | 9 | ** DISREGARD - SEE DOCKET ENTRY #10 FOR COMPLETE MEMORANDUM WITH EXHIBITS ** MEMORANDUM in Support re [8] MOTION for Summary Judgment filed by Doug K. Handshoe (Truitt - PHV, Jack) Modified on 6/28/2012 to delete docket entry relationship to pending motion (avm). (Entered: 6/27/2012) |
| 6/28/2012 | | DOCKET ANNOTATION as to #9: Pursuant to Fed.R.Cr.P. Rule 49(d) and Fed.R.Civ.P. Rule 84, appendix form 2 states that date, signature, address, e-mail address and telephone number are used at the conclusion of pleadings and other papers that require a signature. Document is undated (on the respectfully submitted page), but the date will be construed as the date of electronic filing. Attorney is advised to follow this rule in future filings. See second annotation entered on 6/27/12 regarding dating documents. (RLW) (Entered: 6/28/2012) |
| 6/28/2012 (p.828) | 10 | MEMORANDUM in Support re [8] MOTION for Summary Judgment filed by Doug K. Handshoe (Attachments: # (1) Supplement Statement of Uncontested Material Facts, # (2) Exhibit Exhibit 1 - Affidavit of Douglas Handshoe, # (3) Exhibit Exhibit 2 - 2.1.12 Decision re TPL v. DH (Nova Scotia), # (4) Exhibit Exhibit 3 - Investorshub v. Mina Mar Judgment, # (5) Exhibit Exhibit 4 - Grant v. Torstar, # (6) Exhibit Exhibit 5 - Hill v. Church of Scientology)(Truitt - PHV, Jack) (Entered: 6/28/2012) |
| 6/28/2012 (p.1005) | 11 | MEMORANDUM in Opposition re [6] MOTION for Summary Judgment filed by Doug K. Handshoe (Truitt - PHV, Jack) (Entered: 6/28/2012) |
| | 12 | |

| | | |
|---|---|---|
| 7/2/2012 (p.1014) | | MOTION for Extension of Time to File Response/Reply as to [11] Memorandum in Opposition to Motion, [6] MOTION for Summary Judgment by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 7/2/2012) |
| 7/2/2012 (p.1017) | 13 | MOTION for Extension of Time to File Response/Reply as to [8] MOTION for Summary Judgment by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 7/2/2012) |
| 7/3/2012 (p.1020) | 14 | Amended MOTION for Extension of Time to File Response/Reply as to [13] MOTION for Extension of Time to File Response/Reply as to [8] MOTION for Summary Judgment by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 7/3/2012) |
| 7/3/2012 | | TEXT ONLY ORDER granting Plaintiffs' [12] Motion for Extension of Time to File Reply re [6] MOTION for Summary Judgment. Plaintiffs' Reply is due by 7/11/2012. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Chief District Judge Louis Guirola, Jr on 7/3/12 (ESN) (Entered: 7/3/2012) |
| 7/3/2012 | | TEXT ONLY ORDER granting Plaintiffs' [14] Motion for Extension of Time to File Response re Defendant's [8] MOTION for Summary Judgment. Response is due by 7/25/2012. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Chief District Judge Louis Guirola, Jr on 7/3/12. (ESN) (Entered: 7/3/2012) |
| 7/3/2012 | | TEXT ONLY ORDER finding as moot [13] Motion for Extension of Time to File Response/Reply. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Chief District Judge Louis Guirola, Jr on 7/3/12 (ESN) (Entered: 7/3/2012) |
| 7/3/2012 (p.1023) | 15 | Unopposed MOTION for Extension of Time to File Response/Reply as to [11] Memorandum in Opposition to Motion *for Summary Judgment* by Doug K. Handshoe (Truitt - PHV, Jack) (Entered: 7/3/2012) |
| 7/5/2012 | | TEXT ONLY ORDER granting Defendant's [15] Motion for Extension of Time to File Reply re [8] MOTION for Summary Judgment. Reply due by 7/23/2012. Signed by Chief District Judge Louis Guirola, Jr. on 7/5/2012. (ESN) (Entered: 7/5/2012) |
| 7/11/2012 (p.1025) | 16 | Rebuttal re [11] Memorandum in Opposition to Motion *for Summary Judgment* filed by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Attachments: # (1) Appendix Nova Scotia Civil Procedure Rules Part 3 Rule 8 and Part 7 Rule 31)(Laird,Henry) Modified on 7/11/2012 to add document link (avm). (Entered: 7/11/2012) |
| 7/11/2012 (p.1054) | 17 | AFFIDAVIT re [6] MOTION for Summary Judgment by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Attachments: # (1) Exhibit "A" Newspaper article, # (2) Exhibit "B" Print out of Google Searches, # (3) Exhibit "C" Transcript of Supreme Court Proceeding dated January 30, 2012 and January 31, 2012, # (4) Exhibit Fax received from Nova Scotia Court from D. Handshoe)(Laird, Henry) (Entered: 7/11/2012) |

| | | |
|---|---|---|
| 7/11/2012<br>(p.1107) | 18 | AFFIDAVIT re [6] MOTION for Summary Judgment by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Attachments: # (1) Exhibit "A" Klout Assessment of Slabbed's Twitter Account)(Laird, Henry) (Entered: 7/11/2012) |
| 7/11/2012 | | DOCKET ANNOTATION as to #16: Incorrect linkage made. Rebuttal should be linked to original Motion, as all related filings to motions (using the "Responses and Replies" category, with the exception of "Response to Order") should be linked back to the original motion. Court staff has made the correction. (avm) (Entered: 7/11/2012) |
| 7/21/2012<br>(p.1115) | 19 | RESPONSE to Memorandum re [16] Rebuttal, *Memorandum in Opposition to Defendant's Motion for Summary Judgment* filed by Doug K. Handshoe (Attachments: # (1) Exhibit Exhibit 1 - Factual Basis of Karen Broussard, # (2) Exhibit Exhibit 2 - Internet Posting of Trout Point)(Truitt - PHV, Jack) Modified on 7/24/2012 to add document link to original motion (avm). (Entered: 7/21/2012) |
| 7/24/2012 | | DOCKET ANNOTATION as to #19: Incorrect linkage made. Response should be linked to original motion [6], as all related filings to motions (using the "Responses and Replies" category, with the exception of "Response to Order") should be linked back to the original motion. Court staff has made the correction. (avm) (Entered: 7/24/2012) |
| 7/25/2012<br>(p.1147) | 20 | Response in Opposition re [10] MEMORANDUM in Support re [8] MOTION for Summary Judgment filed by Doug K. Handshoe (Attachments: # (1) Supplement Statement of Uncontested Material Facts, # (2) Exhibit Exhibit 1 - Affidavit of Douglas Handshoe, # (3) Exhibit Exhibit 2 - 2.1.12 Decision re TPL v. DH (Nova Scotia), # (4) Exhibit Exhibit 3 - Investorshub v. Mina Mar Judgment, # (5) Exhibit Exhibit 4 - Grant v. Torstar, # (6) Exhibit Exhibit 5 - Hill v. Church of Scientology)(Truitt - PHV, Jack) filed by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Attachments: # (1) Appendix "1" Accusation of Criminality and Moral Laxities)(Laird, Henry) (Entered: 7/25/2012) |
| 7/25/2012<br>(p.1175) | 21 | AFFIDAVIT re [20] Response in Opposition,, *of Charles Leary* by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) Modified on 7/25/2012 to add link to [8] motion (avm). (Entered: 7/25/2012) |
| 7/25/2012<br>(p.1203) | 22 | AFFIDAVIT re [20] Response in Opposition,, *of Daniel Gillis* by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) Modified on 7/25/2012 to add link to [8] motion (avm). (Entered: 7/25/2012) |
| 7/25/2012 | | DOCKET ANNOTATION as to #21 and #22: Incorrect linkage made. Affidavits should be linked to motion for summary judgment, as all related filings to motions should be linked back to the original motion. Court staff has made the correction. (avm) (Entered: 7/25/2012) |
| 7/27/2012<br>(p.1204) | 23 | ** DISREGARD - MOTION WITHDRAWN PURSUANT TO ORDER OF 12/8/2012 ** MOTION to Strike [19] Response to Memorandum, *of Defndant Douglas Handshoe* by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) Modified on 8/9/2012 (avm). (Entered: 7/27/2012) |
| | 24 | |

| | | |
|---|---|---|
| 7/27/2012 (p.1206) | | MEMORANDUM in Support re [23] MOTION to Strike [19] Response to Memorandum, *of Defndant Douglas Handshoe* filed by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 7/27/2012) |
| 7/30/2012 (p.1209) | 25 | MOTION to Withdraw [23] MOTION to Strike [19] Response to Memorandum, *of Defndant Douglas Handshoe*, [19] Response to Memorandum, by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 7/30/2012) |
| 8/2/2012 (p.1211) | 26 | MOTION to file additional briefs on cross motions for summary jugdment or in the alternative to strike brief of Defendant re [8] MOTION for Summary Judgment, [6] MOTION for Summary Judgment, [19] Response to Memorandum, by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 8/2/2012) |
| 8/6/2012 (p.1216) | 27 | REPLY to Response to Motion re [16] Rebuttal, *Supplemental Reply Memorandum* filed by Doug K. Handshoe (Attachments: # (1) Exhibit nola.com article, # (2) Exhibit Karen Parker Factual Basis, # (3) Exhibit Trout Point blog post, # (4) Exhibit D'Aquila letter, # (5) Exhibit Slabbed blog post, # (6) Exhibit ACOA lawsuit, # (7) Exhibit Loeb resume, # (8) Exhibit ACOA lawsuit 2, # (9) Exhibit Frank Magazine Issue 577)(Truitt - PHV, Jack) Modified on 8/7/2012 to add document link to [6] motion for summary judgment (avm). (Entered: 8/6/2012) |
| 8/7/2012 | | DOCKET ANNOTATION as to #27: pursuant to previous docket annotations dated 7/11/2012, 7/24/2012, and 7/25/2012, incorrect linkage made. Reply to response to motion should be linked to [6] original motion for summary judgment, as all related filings to motions (using the "Responses and Replies" category, with the exception of "Response to Order") should be linked back to the original motion. Court staff has made the correction. (avm) (Entered: 8/7/2012) |
| 8/7/2012 (p.1316) | 28 | MOTION to Strike [27] Reply to Response to Motion,, *of Douglas K. Handshoe* by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 8/7/2012) |
| 8/8/2012 | | TEXT ONLY ORDER granting [26] Motion for Additional Briefing. Plaintiff may file a reply to Defendant's [27] reply brief. Plaintiffs' brief shall be due on or before 8/21/12. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Chief District Judge Louis Guirola, Jr on 8/8/12. (ESN) (Entered: 8/8/2012) |
| 8/8/2012 | | TEXT ONLY ORDER finding as moot Plaintiffs' [28] Motion to Strike. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Chief District Judge Louis Guirola, Jr on 8/8/12 (ESN) (Entered: 8/8/2012) |
| 8/8/2012 | | TEXT ONLY ORDER granting Plaintiffs' [25] Motion to Withdraw Motion to Strike [23]. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Chief District Judge Louis Guirola, Jr on 8/8/12 (ESN) (Entered: 8/8/2012) |
| 8/21/2012 (p.1318) | 29 | MEMORANDUM IN OPPOSITION re [27] Reply to Response to Motion, filed by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) Modified on 8/22/2012 to add link to motion [6] (wld). (Entered: 8/21/2012) |

| | | |
|---|---|---|
| 8/21/2012 (p.1342) | 30 | AFFIDAVIT in Support re [29] Memorandum in Opposition (*Affidavit of Charles Leary*) by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 8/21/2012) |
| 8/21/2012 (p.1361) | 31 | AFFIDAVIT in Support re [29] Memorandum in Opposition (*Affidavit of Vaughn Perret*) by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 8/21/2012) |
| 8/21/2012 (p.1365) | 32 | AFFIDAVIT in Support re [29] Memorandum in Opposition (*Affidavit of Sheri Leigh White*) by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 8/21/2012) |
| 8/22/2012 | | Docket Annotation as to Doc. #29. Incorrect linkage made. This memorandum should have been linked to motion #6. All related filings to motions (using the "Responses and Replies" category, with the exception of "Response to Order") should also be linked back to the original motion. Court staff has made the correction.(wld) (Entered: 8/22/2012) |
| 9/10/2012 | | Set/Reset Hearings: Settlement Conference set for 11/29/2012 01:30 PM before Magistrate Judge John M. Roper. PARTIES WITH FULL SETTLEMENT AUTHORITY MUST BE PRESENT. CONFIDENTIAL SETTLEMENT AUTHORITY MUST BE SUBMITTED ON OR PRIOR TO NOVEMBER 14,2012. (Nicaud, Jenny) (Entered: 9/10/2012) |
| 9/11/2012 (p.1367) | 33 | Emergency MOTION to Expedite Decision on Cross Motions for Summary Judgment, MOTION for Status Conference by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Attachments: # (1) Exhibit "A" Defamatory Blogg dated September 11, 2012, # (2) Exhibit "B" (Part 1 of 2) Broussard Criminal case pleading, # (3) Exhibit "B" (Part 2 of 2) Broussard Criminal case pleading)(Laird, Henry). Added MOTION for Status Conference on 9/13/2012 (JCH). (Entered: 9/11/2012) |
| 9/12/2012 | | Reset Hearing: Due to a conflict with the Court's calendar, the Settlement Conference is RESET to 11/15/2012 01:30 PM before Magistrate Judge John M. Roper. PARTIES WITH FULL SETTLEMENT AUTHORITY MUST BE PRESENT. CONFIDENTIAL SETTLEMENT AUTHORITY MUST BE SUBMITTED ON OR PRIOR TO NOVEMBER 8, 2012 (VLK) (Entered: 9/12/2012) |
| 9/13/2012 | | DOCKET ANNOTATION as to # 33. This document requests several motion reliefs. Every motion relief should be selected from the list of motion titles or each relief docketed separately. The same PDF document may be used for all motion filing entries. It is not necessary to refile as court staff has made the necessary correction. Attorney is advised to follow this procedure in future filings. (JCH) (Entered: 9/13/2012) |
| 11/15/2012 | | Minute Entry for proceedings held before Magistrate Judge John M. Roper: Settlement Conference held on 11/15/2012. Settlement was not reached. (Entered: 11/15/2012) |
| | 34 | |

| | | |
|---|---|---|
| 11/21/2012 (p.1529) | | NOTICE of Hearing: Pretrial Conference set for 12/20/2012 at 3:30 PM in Courtroom 806 (Gulfport) before Chief District Judge Louis Guirola, Jr. (CG) (Entered: 11/21/2012) |
| 12/19/2012 (p.1534) | 35 | ORDER denying [6] Plaintiffs' Motion for Summary Judgment; granting [8] Defendant's Motion for Summary Judgment. Signed by Chief District Judge Louis Guirola, Jr on 12/19/2012. (avm) (Entered: 12/19/2012) |
| 12/19/2012 (p.1553) | 36 | JUDGMENT in favor of Defendant Doug K. Handshoe against Plaintiffs Trout Point Lodge, Limited, Charles Leary, Vaughn Perret; this case is hereby dismissed with prejudice. Signed by Chief District Judge Louis Guirola, Jr on 12/19/2012. (avm) (Entered: 12/19/2012) |
| 12/26/2012 (p.1554) | 37 | NOTICE OF APPEAL as to [35] Order on Motion for Summary Judgment, [36] Judgment by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited. Filing fee $ 455, receipt number 14643004084. (avm) (Entered: 12/27/2012) |
| 12/27/2012 (p.1556) | 38 | MOTION for Bond *on Appeal Filed by Plaintiffs* by Doug K. Handshoe (Truitt - PHV, Jack) (Entered: 12/27/2012) |
| 1/3/2013 (p.1559) | 39 | MOTION for Extension of Time to File Response/Reply as to [38] MOTION for Bond *on Appeal Filed by Plaintiffs* by Charles Leary, Vaughn Perret, Trout Point Lodge, Limited (Laird, Henry) (Entered: 1/3/2013) |

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

```
SOUTHERN DISTRICT OF MISSISSIPPI
        FILED
      DEC 26 2012
       J T NOBLIN CLERK
BY_____ DEPUTY
```

TROUT POINT LODGE, LIMITED, A Nova Scotia
Limited Company; VAUGHN PERRET and
CHARLES LEARY                                          PLAINTIFFS

VERSUS                              CIVIL ACTION NO: 1:12CV00090 LG-JMR

DOUG K. HANDSHOE                                        DEFENDANT

---

### NOTICE OF APPEAL

---

NOTICE is hereby given that Trout Point Lodge, Limited, A Nova Scotia Limited Company; Vaughn Perret; and Charles Leary in the above styled case, hereby appeal to the United States Court of Appeals for the Fifth Circuit the Order Denying Plaintiffs' Motion for Summary Judgment and Granting Defendant's Motion for Summary Judgment and Judgment entered in this case on December 19, 2012.

Respectfully submitted, this the 26th day of December, 2012.

Trout Point Lodge, Limited, Vaughn Perret and Charles Leary

By: _____
Henry Laird, Mississippi Bar No. 1774

USCA5 1554

## CERTIFICATE OF SERVICE

I, Henry Laird, do hereby certify that I have sent a true and correct copy of the foregoing Notice of Appeal by using the ECF system to the following:

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi 39466
Email: ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA 70433
Email: mail@truittlaw.com

This the 26th day of December, 2012.

Henry Laird

Henry Laird (MSB No. 1774)
Email: hlaird@joneswalker.com
Jaklyn Wrigley (MSB No. 103773)
Email: jwrigley@joneswalker.com
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, LLP
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS 39502
Telephone: (228) 864-3094
Facsimile: (228) 864-0516

{GP008053.1}

2

USCA5 1555

3

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**TROUT POINT LODGE LIMITED,**
**A Nova Scotia Limited Company;**
**VAUGHN PERRET, and CHARLES**
**LEARY**                                                    **PLAINTIFFS**

**V.**                                              **CAUSE NO. 1:12CV90-LG-JMR**

**DOUG K. HANDSHOE**                                          **DEFENDANT**

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [6] Motion for Summary Judgment filed by

Plaintiffs Trout Point Lodge Limited, a Nova Scotia Limited Company ("Trout Point

Lodge"), Vaughn Perret, and Charles Leary, and the [8] Motion for Summary

Judgment filed by Defendant Doug K. Handshoe. This action seeks to enforce a

judgment issued by the Supreme Court of Nova Scotia, Canada, in a defamation

action. Defendant Handshoe has published, via the Internet, various statements

about Plaintiffs. Plaintiffs are Nova Scotia residents, and they sued Handshoe in

the Supreme Court Nova Scotia, alleging defamation and other claims. The

Supreme Court of Nova Scotia issued a judgment awarding monetary and

injunctive relief to Plaintiffs. The parties' motions seek summary judgment with

respect to whether a judgment issued by the Supreme Court of Nova Scotia may be

enforced in this jurisdiction. The parties have filed a total of five (5) briefs [11, 16,

19, 27, 29] with respect to Plaintiffs' Motion for Summary Judgment, and two with

respect to Defendant's Motion for Summary Judgment [10, 20]. The parties have

also submitted several affidavits and exhibits. The Court has reviewed the parties'

submissions and the applicable law.  For the reasons set forth below, the Court

finds that under the provisions of The SPEECH Act, 28 U.S.C. 4101 *et seq.*, it may

not enforce the judgment of the Supreme Court of Nova Scotia.  Accordingly,

Plaintiffs' Motion for Summary Judgment is denied, and Defendant's Motion for

Summary Judgment is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are Trout Point Lodge, a vacation lodge in Nova Scotia, and

Vaughn Perret and Charles Leary, who serve as Managing Directors, chefs, and

proprietors at Trout Point Lodge.[1]  Plaintiffs filed a complaint in the Nova Scotia

court in 2011 against Defendant Doug Handshoe, alleging, *inter alia*, defamation

claims.  Handshoe, who is a resident of this judicial district, owns and publishes an

Internet website (or blog) entitled "Slabbed."[2]  Handshoe submits that "Slabbed" is

a "forum for local residents and other interested parties to gather and share

information regarding various political and legal issues that impact the Gulf Coast."

(Def.'s Mem. 1, ECF No. 10).  Handshoe has published numerous statements on

"Slabbed" about Trout Point Lodge, Perret, and Leary.  Handshoe's publications

allege, among other things, that the plaintiffs are connected to Aaron Broussard,

former Parish President of Jefferson Parish, Louisiana, who recently pleaded guilty

---

[1] Perret also serves as President of Trout Point Lodge.

[2] Handshoe's pleadings refer to "Slabbed New Media, LLC" as a defendant, but Doug Handshoe is the only named defendant.  Slabbed New Media, LLC is not a party to this action.

USCA5 1535

to engaging in criminal activity while in office.  Broussard was indicted in the United States District Court for the Eastern District of Louisiana, and pleaded guilty to charges of bribery and theft in September of this year.

According to the parties' briefs, Broussard had, or has, some ownership interest in property in Nova Scotia, Canada.  The record demonstrates that in January 2010, the *Times-Picayune*, a New Orleans publication, published articles regarding the Broussard corruption scandal.  Those articles mentioned Trout Point Lodge, and identified Broussard as having an ownership interest in Trout Point Lodge.[3]  Plaintiffs then contacted the *Times-Picayune* and "pointed out factual errors in [its] reporting." (Leary Aff. 2, ECF No. 17).  Subsequently, the *Times-Picayune* issued a retraction of its identification of Broussard as an owner of Trout Point Lodge, and apologized for publishing that material. (Leary Aff. Ex. 1, ECF No. 17-1).

Defendant Handshoe also began publishing on "Slabbed" about Broussard and his alleged connection to Trout Point Lodge, Perret, and Leary in or about January 2010.  The time line is not entirely clear from the record, but it appears that after Plaintiffs demanded the retraction from the *Times-Picayune*, the "Slabbed" blog was taken offline by the *Times-Picayune*'s corporate parent, Advance Publications.  Handshoe, apparently in reaction to his blog being taken offline, then

---

[3]According to the record, Broussard's Nova Scotia property is located on Trout Point Road, in close proximity to Trout Point Lodge.

USCA5 1536

began an internet campaign to damage Perret and Leary.[4] Handshoe has published

numerous entries on "Slabbed" about Plaintiffs, many of which may be

characterized as derogatory, mean spirited, sexist and homophobic.[5] Handshoe has

continued to use his reporting on "Slabbed" as a platform from which to allege a

connection between Broussard's crimes and Trout Point Lodge.[6] Among other

things, Handshoe has accused Perret and Leary of being involved in a scheme in

which Broussard used a Canadian company to launder money proceeds of illegal

activities in Jefferson Parish.[7]

Handshoe has also published material about Leary and Perret that is

unrelated to the Broussard scandal. For example, Handshoe has published

statements regarding litigation involving Perret's and Leary's former business

venture and the Atlantic Canada Opportunities Agency (ACOA). Handshoe has

---

[4] Handshoe subsequently found another web host for the "Slabbed" blog.

[5] For example, Handshoe has made a number of off-color sexual remarks about Vaughn and Perret, and has published several photo-shopped images of Vaughn and Perret in an apparent attempt to harass or embarrass them. Handshoe repeatedly refers to Vaughn and Leary, both of whom are male, as "the girls."

[6] Handshoe also publishes his "Slabbed" entries on Twitter.

[7] For example, Handshoe has stated on "Slabbed" that he spoke with a former Trout Point Lodge employee, and "[i]n answer to the question as to who handled the money for Aaron's property? Definitely Trout Point . . . This makes sense and confirms a long-held suspicion that he girls were the fiscal agents for all the cabins owned by Louisianians close to the Lodge including Aaron Broussard. That said the Lodge's financial records would certainly contain evidence to either support the pay-to-Trout Point to play in Jefferson Parish allegations that are at the heart of this story." (Leary Aff. 5, ECF No. 17).

4

alleged that Plaintiffs were dishonest in dealing with the Canadian agency, and

suggested that Leary committed perjury during that proceeding.[8]

"Slabbed" contains numerous entries about, or that Handshoe relates to, the

plaintiffs.  Some of the entries are simply links to articles by other publications.

Some of the blog entries discuss Vaughn and Perret directly.[9]  In others, the content

of the entry does not mention the plaintiffs, but Handshoe relates the title of the

post to the plaintiffs.  For example, Handshoe posted an entry about a factual basis

filed in the criminal proceeding against Aaron Broussard's ex-wife, Karen Parker

Broussard.  The factual basis, filed by the United States Attorney's Office, stated:

> Additionally, from approximately 2004 through 2010,
> Broussard received monies, totaling hundreds of
> thousands of dollars, that were characterized as, among
> other things, "retainers," "consulting fees" or "finder's
> fees" with various contractors and vendors, all of whom
> were doing business with Jefferson Parish during the
> period of time Broussard was the President of Jefferson

---

[8] For example, Handshoe stated on "Slabbed:" "You see the girls have left a trail of financial wreckage in Canada reportedly screwing over trade venders [sic] and others building the Lodge and that harebrained exotic cheese farm La Ferme D'Acadie where they shafted the Atlantic Canada Opportunities Agency." (Leary Aff. 5-6, ECF No. 17).

[9] During 2012 alone, there have been approximately sixty publications on "Slabbed" that reference the plaintiffs.  The record indicates that there may be hundreds of posts regarding the plaintiffs.  Some of his posts were entitled, among other things: "Slabbed travels back in time with the girls and ties a few things together.  A Trout Point Lodge / Jefferson PARISH Political Corruption Scandal Update Part 1;" (this was followed by "Part 2") and "First class bitches, common thugs or plain ol' morons: The Girls at Trout Point Lodge sue Fox 8 and Slabbed. A Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update." Handshoe claimed he would "meticulously lay down the trail of scams and political corruption that leads to Nova Scotia and Trout Point Lodge."

> Parish. Moreover, Broussard was a majority owner in a
> holding company which owned an investment property in
> Canada. Broussard received income from this Canadian
> property. This property was partially funded by
> individuals and/or entities who were contractors and/or
> vendors doing business with Jefferson Parish during the
> period of time Broussard was the Jefferson Parish
> President.

(Def.'s Reply, Ex. 2 at 7, ECF No. 27-2). The factual basis says that Broussard was

"a majority owner in a holding company that had investment property in Canada."

It says nothing about Trout Point Lodge, Leary, Perret, or even Daniel Abel.

However, Handshoe entitled his blog entry, "BREAKING: Aaron Broussard

Laundered his money through Nova Scotia!!!!! A Trout Point update." In that entry,

he references Leary and Perret and addresses them, stating, "So girls . . . rest

assured I have a complete series of posts coming that will explore both Karen

Parker's latest revelations and soooo much more."

Other blog entries contain no content about Vaughn or Perret or Trout Point

Lodge, but Handshoe links the entries to their names with "tags." For example, on

October 6, 2012, Handshoe posted a blog entry entitled "How I Spent My Summer

Vacation," which essentially states that Handshoe examined "thousands" of public

documents from Aaron Broussard's office. The blog entry does not mention Perret

or Leary; it does not claim that the plaintiffs were mentioned in any of the

documents Handshoe examined. However, Handshoe provides "tags" for Vaughn,

Perret, and Trout Point Lodge at the bottom of the entry, therefore linking their

names to the entry about Broussard's files. Moreover, Handshoe characterizes

6

posts about the Broussard scandal as "Trout Point development(s)," whether or not the substance of the entry actually relates to Nova Scotia.

In response to the publications on "Slabbed," the Plaintiffs filed a complaint (their First Amended Statement of Claim) in the Supreme Court of Nova Scotia against Handshoe for "defamation, invasion of privacy, injurious falsehood, intentional interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional and mental distress and assault." (Pls.' Mot. Ex. 5 at 3, ECF No. 6-5). Defendant Handshoe was served with process in Wiggins, Mississippi. (Pls.' Mot. Ex. 1, ECF No. 6-1). Handshoe never appeared in the Supreme Court of Nova Scotia, and that court entered a default judgment against him. As the Nova Scotia court explained, the effect of the default judgment is that "the claims against Mr. Handshoe are . . . to be treated . . . as proven," and that Handshoe had admitted the claims against him. (Pls.' Mot. Ex. 5 at 5, ECF No. 6-5; Pls.' Mot. Ex. 3, ECF No. 6-3). The Nova Scotia court held a hearing on the assessment of damages and heard evidence from Perret and Leary. The court issued an Oral Decision following the hearing.

The court's decision summarized the evidence put forth by Perret and Leary about the harm they suffered as a result of Handshoe's publications. This included testimony about emotional distress and physical manifestations of stress they experienced. The plaintiffs stated that they believed the publications on "Slabbed"

7

were harmful to their business, but admitted that this was very difficult to prove.[10]
The court discussed the content of Handshoe's publications about the plaintiffs,
noting that Handshoe had made accusations of fraud and criminal activity against
the plaintiffs, as well as a number of anti-gay, personal attacks on them. The court
entered a judgment in which it awarded Trout Point Lodge general damages in the
amount of $75,000, and Perret and Leary each $100,000 in general damages,
$50,000 in aggravated damages,[11] and $25,000 in punitive damages. The court also
issued injunctive relief, stating:

> In addition, I order a permanent injunction to issue
> against the defendant, Douglas K. Handshoe, restraining
> him from disseminating, posting on the Internet or
> publishing, in any manner whatsoever, directly or
> indirectly, any statements or comments about the
> plaintiffs, Trout Point Lodge, Charles L. Leary, and
> Vaughn J. Perret. This injunction shall include the
> publication, circulation and promotion on the blog named
> Slabbed, and any similar or other publications. For
> further particularity, the defendant shall not publish or
> cause to be published or otherwise disseminate or
> distribute in any manner whatsoever, whether by way of
> the Internet or other medium, any statements or other
> communications which refer to the plaintiffs by name,
> depiction or description.

> I also order a mandatory injunction to issue against the

---

[10] Plaintiffs submitted that occupancy rates at Trout Point Lodge were three
percent (3%) lower in 2011 than in 2010. (Pls.' Mot. Ex. 5 at 8, ECF No. 6-5).

[11] Under Canadian law, "[a]ggravated damages may be awarded in
circumstances where the defendant's conduct has been particularly high handed or
oppressive thereby increasing the plaintiffs' humiliation and anxiety arising from
the libellous statement." *Hill v. Church of Scientology of Toronto* (1995), S.C.R.
1130, para. 188 (Can.).

USCA5 1541

> above-named Defendant regarding continued publication
> in any manner whatsoever, whether by way of the
> Internet or other medium, any statements or other
> communications which refer to the plaintiffs by name,
> depiction or description. All such material is hereby
> ordered to be immediately removed from publication.

Pls.' Mot. Ex. 2, ECF No. 6-2.

Plaintiffs now seek to enforce the judgment of the Supreme Court of Nova

Scotia in this Court. Plaintiffs filed a Motion to Enroll Foreign Judgment in the

Circuit Court of Hancock County, Mississippi, and Defendant removed the action to

this Court pursuant to 28 U.S.C. § 1441. Defendant Handshoe argues that under

the SPEECH Act, 28 U.S.C. 4101 *et seq.*, the judgment of the Canadian court is

unenforceable in the United States because (1) Canadian law provides less

stringent protections for freedom of speech than United States laws and (2)

Handshoe would not have been found liable for defamation in a domestic court.

Plaintiffs Trout Point Lodge, Perret, and Leary argue they are entitled to summary

judgment, and execution of the Nova Scotia judgment, because the requirements of

the SPEECH Act have been satisfied. They submit that Canadian law afforded

Defendant Handshoe "as much free speech protection as he would have received in

a state or federal district court of the United States." (Pls.' Mem. 11, ECF No. 7).

They also argue that had Defendant Handshoe been sued in a court in Mississippi,

he would have been liable for defamation.

9

## DISCUSSION

### The SPEECH Act

The question before the Court is whether the judgment of the Supreme Court
of Nova Scotia is enforceable as a matter of law. The Securing the Protecting of Our
Enduring and Established Constitutional Heritage Act, or the SPEECH Act, was
passed by the United States Congress in 2010. The Act governs recognition of
foreign defamation judgments in courts in the United States. The SPEECH Act
was passed in an attempt to counteract "libel tourism," or the practice of
"circumventing First Amendment protections" by filing lawsuits in foreign
jurisdictions that lack similar protections. *See* H.R. Rep. No. 111-154, at 2 (2009).
Congress was concerned that such forum-shopping could have a chilling effect on
free speech here in the United States, and undermine the First Amendment
protections provided by our Constitution.[12] The SPEECH Act intended to "provide a
single, uniform standard for addressing . . . foreign libel judgments." (S. Rep. No.
111-224 at 4 (2010). It provides for removal to federal courts where, as here, an

---

[12] In passing the SPEECH Act, Congress reacted, at least in part, to
defamation actions brought in Britain, which has a plaintiff-friendly approach to
defamation law and allows injunctions that would be prohibited in the United
States. One example of these British libel actions was the lawsuit brought by Saudi
billionaire Khalid Bin Mahfouz against author and United States citizen Rachel
Ehrenfeld, who accused Bin Mahfouz of providing financial support for terrorism in
her book, *Funding Evil: How Terrorism is Financed and How to Stop It*. Bin
Mahfouz, who was not a British citizen, successfully sued Ehrenfeld in a British
court and received monetary damages and injunctive relief prohibiting publication
of the book in Britain and ordering its removal from public libraries. *See* S. Rep.
No. 111-224 at 3 (2010).

10

enforcement action has been filed in state court.  *See* 28 U.S.C. § 4103.

The Act essentially provides that an American court shall not enforce a foreign defamation judgment unless the plaintiff has demonstrated that the foreign court provided at least as much protection for freedom of speech as a court in the United States would have, **or** that the defendant would have been found liable for defamation in a domestic court applying state and federal law.  The statute provides, in pertinent part:

> (a) First Amendment considerations.--
>
> (1) In general.--Notwithstanding any other provision of Federal or State law, a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that--
>
> (A) the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located; or
>
> (B) even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the first amendment to the Constitution of the United States and the constitution and law of the State, the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located.
>
> (2) Burden of establishing application of defamation laws.--The party seeking recognition or enforcement of the foreign judgment shall bear the burden of making the showings required under subparagraph (A) or (B).

11

28 U.S.C. § 4102.[13]

The Court finds that Plaintiffs have not demonstrated that either (A) that the

Supreme Court of Nova Scotia provided the level of protection for freedom of speech

in this case as an American court, or (B) that Handshoe would have been found

liable for defamation in a court in this state.

It is well-established under the law of the United States and Mississippi that

in order to hold a defendant liable for defamation, the plaintiff must demonstrate

that the statement complained of is false. *See Phila. Newspapers, Inc. v. Hepps*, 475

U.S. 767, 776 (1986); *P.L. Blake v. Gannet Co.*, 529 So. 2d 595, 602 (Miss. 1988).

Truth is an "absolute defense" to a claim of defamation under Mississippi law.

*Blake*, 529 So.2d at 602 (citing *Fulton v. Miss. Publishers Corp.*, 498 So. 2d 1215,

1217 (Miss. 1986); *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So. 2d 77 (Miss.

1986) (citation omitted); *Smith v. Byrd*, 225 Miss. 331, 83 So. 2d 172, 174 (1955);

*Conroy v. Breland*, 185 Miss. 787, 189 So. 814, 816 (1939); and Miss. Const. Art. 3, §

13 (1890)). The Mississippi Supreme Court has held that even statements that are

only "substantially true" are not an adequate basis to establish defamation. *See*

*Armistead v. Minor*, 815 So. 2d 1189, 1194 (Miss. 2002).

---

[13]Section (c) of the SPEECH Act addresses foreign defamation judgments
against providers of interactive computer services, as defined by section 230 of the
Communications Act of 1934, 47 U.S.C. 230, and requires that the judgment be
consistent with the Communications Act. There is no suggestion that Handshoe
qualifies as a provider of an interactive computer service.

USCA5 1545

In contrast, under Canadian law, falsity is not an element of defamation; rather, truth may be raised as a defense. *See Grant v. Torstar* (2009) 3 S.C.R. 640, para. 28-32 (Can.). In *Grant v. Torstar*, the Supreme Court of Canada stated:

> A plaintiff in a defamation action is required to prove three things to obtain a judgment and an award of damages: (1) that the impugned words were defamatory, in the sense that they would tend to lower the plaintiff's reputation in the eyes of a reasonable person; (2) that the words in fact referred to the plaintiff; and (3) that the words were published, meaning that they were communicated to at least one person other than the plaintiff. If these elements are established on a blaance of probabilities, **falsity and damages are presumed . . . [t]he tort is thus one of strict liability.** If the plaintiff proves the required elements, the onus then shifts to the defendant to advance a defence in order to escape liability.

*Id.* at para. 28-29 (emphasis added).

According to the record before this Court, the decision of the Supreme Court of Nova Scotia does not contain specific findings of fact with respect to the falsity of Handshoe's statements. Because Handshoe did not defend against the plaintiffs' claims, the Nova Scotia court entered a default judgment, and then focused solely on damages. A Mississippi court would require proof of damages only if the plaintiff first proved the statements at issue were false. To establish a *prima facie* claim of defamation in Mississippi, the plaintiff has the burden to prove the following:

> (1) a false and defamatory statement concerning plaintiff;
> (2) unprivileged publication to third party;
> (3) fault amounting at least to negligence on part of publisher;
> (4) and either actionability of statement irrespective of special harm or existence of special harm caused by

13

USCA5 1546

publication.

*Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002)(citing *Franklin v.*

*Thompson*, 722 So. 2d 688, 692 (Miss. 1998). The "threshold question in a

defamation suit is whether the published statements are false." *Id.* Thus, without a

showing of falsity, a court in this jurisdiction would never reach the question of

damages.

     In addition, if the plaintiff is deemed to be a public figure, he or she must

prove that the defendant acted not with mere negligence, but with "actual malice"

under the familiar standard set forth in *New York Times Co. v. Sullivan*, 376 U.S.

254, 279-80 (1964), and must do so with 'clear and convincing proof.' *Gertz v. Robert*

*Welch, Inc.*, 418 U.S. 323, 342 (1974).  Defendant Handshoe argues that plaintiffs

are "vortex public figures" under Mississippi law, and therefore the "actual malice"

requirement applies to their claims of defamation.  The Court need not determine,

at this point, whether the plaintiffs are public figures for the purposes of the *New*

*York Times v. Sullivan* standard.  The Court finds that it is sufficient that, in this

case, the plaintiffs have not demonstrated that they were required to prove the

falsity of Handshoe's statements, and therefore have not established they are

entitled to enforcement of the Nova Scotia judgment under the SPEECH Act.[14]

---

    [14] The Court does note, however, that Canada has declined to adopt the *New York Times Co. v. Sullivan* standard. *See Hill v. Church of Scientology of Toronto* (1995), S.C.R. 1130, para. 137 (Can.).  The Supreme Court of Nova Scotia describes *Hill v. Church of Scientology* as "[t]he leading case on defamation in Canada." (Pls.' Mot. Ex. 5 at 16, ECF No. 6-5). *See also Investorshub.com, Inc. v. Mina Mar Group*, No. 4:11cv9-RH-WS (N.D. Fla. 2011) (where, in a Stipulated Final Judgment, the

USCA5 1547

Under our well-established First Amendment principles, truthful speech is protected, and it is the plaintiff's burden to prove falsity in a defamation action. This is not the case in Canada, and it does not appear from the record that the Nova Scotia court conducted an inquiry into the truth of Handshoe's assertions. Likewise, had the Plaintiffs filed their defamation action in Mississippi, they would be required to prove falsity before they would be entitled to damages. Handshoe has not published any specific allegations about what role he believes Leary and Perret played in Broussard's crimes. It is possible this is because Handshoe does not have any information indicating Plaintiffs were involved in Broussard's criminal activity. Handshoe, has, however, made numerous more generalized allegations about connections between Leary, Perret, Abel, and Broussard. Some of these statements seem to be based in fact; others appears to be conspiracy theories that may or may not be substantiated.[15]   As noted above, under the law of

_____

United States District Court for the Northern District of Florida found that Canadian law did not provide the same protections for freedom of speech as United States laws).

[15]   The record indicates that Vaughn and Perret lived in Louisiana prior to establishing their business in Nova Scotia. A New Orleans attorney, Daniel Abel, was (or is) a long-time business partner of Vaughn's and Perret's, and he is also a former law partner of Aaron Broussard's. The plaintiffs have admitted that they, or their company, helped manage Broussard's property in Nova Scotia, which is located very close to Trout Point Lodge. The record contains a letter to Leary and Perret from Roy D'Aquila, a New Orleans attorney connected to Broussard, that discusses the possibility of placing Mr. Broussard's property on an insurance policy held by Trout Point Lodge. (Pls.' Mot. Ex. 10 at 24, ECF No. 6-10). Moreover, the Court is aware that there is a civil action pending in the United States District Court for the Eastern District of Louisiana against Broussard and others in which it is alleged that Trout Point Lodge, Ltd. was one of many "co-conspirators" in a

USCA5 1548

Mississippi, even those statements that are "substantially true" are protected

speech. And this Court cannot determine, based on the record before it, the truth or

falsity of Handshoe's claims that the Plaintiffs are connected to Aaron Broussard's

criminal activities. Nor should it enforce a judgment in an action that, if brought in

this Court, would depend upon the plaintiffs' proof that the statements at issue are

false.

Moreover, it significant to note that the Supreme Court of Nova Scotia issued

a broadly worded, permanent injunction against Handshoe. The injunction

prohibits Handshoe from "disseminating, posting on the Internet or publishing, in

any manner whatsoever, directly or indirectly, any statements or comments about

the plaintiffs[.]" He may not circulate or publish "any statements or other

communications which refer to the plaintiffs by name, depiction or description."

(Pls.' Mot. Ex. 2, ECF No. 6-2). Such an injunction could not conceivably pass

constitutional muster in United States courts, where restraints on speech and the

press are strongly disfavored. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

(1976). There is a heavy presumption that a prior restraint on expression is

---

criminal scheme involving various public officials. *See Concrete Busters of
Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe,
et al.,* No. 2:12cv2596-NJB-KWR (E.D. La.). It has also been alleged that another
business of Vaughn's and Perret's, Cerro Coyote, SA, is another "co-conspirator."
According to the record, Daniel Abel was also an owner of Cerro Coyote. None of
this proves that the plaintiffs were involved in Broussard's criminal activities.
However, the plaintiffs have not proved that Handshoe's publications regarding
their connection to Broussard are false, and under the defamation law of this
country, they are required to do so.

USCA5 1549

unconstitutional. *Id.* (citing *Carroll v. Princess Anne*, 393 U.S. 175, 181, (1968);

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).   "An 'order' issued in 'the

area of First Amendment rights' must be 'precis[e]' and narrowly 'tailored' to

achieve the 'pin-pointed objective' of the 'needs of the case.'" *Carroll*, 393 U.S. 175,

183–184.  This broadly worded injunction, which forbids Handshoe from making

*any* comments regarding the plaintiffs, defamatory or otherwise, would not be

issued in a domestic court.  While many may find Handshoe's publications may be

characterized as distasteful or offensive, this Court cannot enforce an order by a

foreign court that amounts to a prior, and essentially total restraint on his speech.

*See Cohen v. California*, 403 U.S. 15, 26 (1971) (holding that "verbal tumult,

discord, and even offensive utterance" are "necessary side effects of ... the process of

open debate,"and noting that "'(o)ne of the prerogatives of American citizenship is

the right to criticize public men and measures–and that means not only informed

and responsible criticism but the freedom to speak foolishly and without

moderation.'")(quoting *Baumgartner v. United States*, 322 U.S. 665, 673-674 (1944)).

The House Report on the SPEECH Act described the limits the First

Amendment places on the liability of publishers as follows:

> The First Amendment to the Constitution limits the
> liability of authors and publishers under state defamation
> law by *prohibiting injunctions against defamatory
> statements in nearly all instances*, and by restricting the
> circumstances under which a plaintiff may recover
> damages for defamation.  The First Amendment limits
> liability in three key respects.  First, it renders non-
> actionable a defamatory statement of opinion that 'does

17

USCA5 1550

> not contain a provably false factual connotation.' Second,
> it requires the plaintiff to prove the falsity of a
> defamatory statement. Third, it requires the plaintiff to
> prove fault, with clear and convincing evidence, by
> showing actual malice or negligence, depending on the
> subject matter of the statement and whether the
> defendant is a public figure.

H.R. Rep. 111-154 at 2 (2009) (citations omitted) (emphasis added).  In light of these

principles, this Court may not enforce the judgment of the Supreme Court of Nova

Scotia.  The Court finds that to do so would contradict the letter and purpose of the

SPEECH Act.

CONCLUSION

As set forth above, in order to enforce this foreign defamation judgment, the

Plaintiffs must demonstrate that Defendant Handshoe was afforded at least as

much protection for freedom of speech in that action as he would have in a domestic

proceeding, or, alternatively, that Handshoe would have been found liable for

defamation by a domestic court.  They have not met their burden under the

SPEECH Act to establish at least one of these requirements.  Therefore, the Court

may not enforce the judgment of the Supreme Court of Nova Scotia.  Accordingly,

Defendant's Motion for Summary Judgment is granted, and Plaintiffs' Motion for

Summary Judgment is denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [6] Motion for

Summary Judgment filed by Plaintiffs Trout Point Lodge Limited, a Nova Scotia

Limited Company ("Trout Point Lodge"), Vaughn Perret, and Charles Leary is

**DENIED**, and the [8] Motion for Summary Judgment filed by Defendant Doug K.

18

Handshoe is **GRANTED**.

   **SO ORDERED AND ADJUDGED** this the 19th day of December, 2012.


                                    s/ *Louis Guirola, Jr.*
                                    LOUIS GUIROLA, JR.
                                    CHIEF U.S. DISTRICT JUDGE

USCA5 1552

4

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**TROUT POINT LODGE LIMITED,**
**A Nova Scotia Limited Company;**
**VAUGHN PERRET, and CHARLES**
**LEARY**                                              **PLAINTIFFS**

**V.**                              **CAUSE NO. 1:12CV90-LG-JMR**

**DOUG K. HANDSHOE**                            **DEFENDANT**

### JUDGMENT

This matter having come on to be heard on the [6] Motion for Summary

Judgment filed by Plaintiffs Trout Point Lodge Limited, a Nova Scotia Limited

Company, Vaughn Perret, and Charles Leary, and the [8] Motion for Summary

Judgment filed by Defendant Doug K. Handshoe, the Court, after a full review and

consideration of the Motions, the pleadings on file and the relevant legal authority,

finds that in accordance with the Order entered herewith,

**IT IS ORDERED AND ADJUDGED** that judgment is rendered in favor of

Defendant Doug Handshoe, pursuant to FED. R. CIV. P. 56. This case is hereby

**DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 19th day of December, 2012.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

5

2011                                              Yar. No. 353654

## IN THE SUPREME COURT OF NOVA SCOTIA

### BETWEEN:

**Trout Point Lodge, Limited,** *a Nova Scotia Limited*
*Company,* **Vaughn Perret** and **Charles Leary**
**Plaintiffs**

- and -

**Doug Handshoe** and **"Jane Doe"** (annemarieboudreaux@yahoo.com)
**Defendants**

### 1ST AMENDED STATEMENT OF CLAIM

1.  The Plaintiff Trout Point Lodge is a Nova Scotia Limited Company with its registered office and residence in Kemptville, Yarmouth County, Nova Scotia. It was formed and registered with the Nova Scotia Registry of Joint Stocks in December, 1998. Its officers are Vaughn Perret and Charles Leary. Its principal owners are Daniel Abel, Vaughn Perret, and Charles Leary.

2.  The company operates a Nova Scotia-licensed fixed-roof accommodation and restaurant that has an established international & Canadian reputation as one of the premiere boutique hotels and practitioners of sustainable tourism in the world.

3.  High ethical standards are essential to the corporate Plaintiff's reputation.

4.  Plaintiff Charles Leary resides in East Kemptville, Nova Scotia. He is a business person and former professor of history.

5.  Plaintiff Vaughn Perret resides in East Kemptville, Nova Scotia. He is a business person and holds a Juris Doctorate from Cornell University.

6.  Both are closely associated and identified with their businesses Trout Point Lodge and Cerro

Coyote, S.A.

7.   The Defendant Doug Handshoe is a resident of the State of Mississippi. He is a Certified Public Accountant. At all relevant times, he operated a web log, or blog, published on the Internet at slabbed.wordpress.com, hereafter "slabbed." He also owns the domain slabbed.org and made publications at that url.

8.   The domain slabbed.org was registered to Slabbed New Media, LLC, a company of which Defendant Handshoe is the sole member, first registered with the Mississippi Secretary of State on April 11, 2011.

9.   The second made defendant is the person registered with wordpress.com using the email address annemarieboudreaux@yahoo.com (hereafter Boudreaux). This person published on slabbed using the moniker "unslabbed."

10. The plaintiff says that the defendant Handshoe published under the moniker of Sop81_1 as well as other user names. The Plaintiff says that until proved otherwise, the defendant is the author, publisher, and editor of all posts and comments appearing on the slabbed blog, with the exception of the material written by "unslabbed" identified below.

11. In the alternative, the Plaintiff says that defendant Handshoe controlled all publications made on the web site and had the ability to choose to publish or not to publish comments on the blog's postings. The defendant approved all publications made on the blog.

12. As background, it is important to understand that in January, 2010, New Orleans, Louisiana, area news media misidentified the plaintiffs as being involved in a political corruption scandal involving then Jefferson Parish President Aaron Broussard. In this coverage, Trout Point Lodge was mistakenly identified as being Mr. Broussard's business and/or property, and involved in alleged wrongdoing including fraud, kickback schemes, and money laundering. WVUE Television was the first media organization to identify Trout Point Lodge with Broussard. Another prominent news organization, the New Orleans Time-Picayune newspaper, published 2 retractions correcting previous news stories in January, 2010 and April, 2011.

13. According to slabbed, at all relevant times the blog had a steadily increasing viewership, surpassing 90,000 views per month in March, 2011.

14. The Plaintiffs claim against the Defendants for defamation, invasion of privacy & conspiracy to invade privacy, injurious falsehood, intentional interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional & mental

distress, and assault.

## 1ST CAUSE OF ACTION: DEFAMATION

15. The Plaintiff says it relies on the privileges and rights of the Nova Scotia Defamation Act, as amended.

16. The defendants used slabbed to publish on the Internet, and encouraged others to publish, words that referred to Charles Leary, Vaughn Perret, and Trout Point Lodge by name, and/or by inference.

17. The defendants' defamatory publications were republished and linked to on third party web sites.

18. These publications were directly defamatory and were also defamatory by both true and false innuendo in that they would tend to lower the opinion or estimation of the plaintiffs in the eyes of others who read the defamatory publications as a series, or alternatively, in parts.

19. The Plaintiffs say that there are at least 4 defamatory innuendoes and stings active in the slabbed publications.

20. First, there is the identifying and linking of the plaintiffs with the Jefferson Parish Political Corruption Scandal. The sting here is that Trout Point Lodge and its owners were somehow involved in corruption, fraud, money laundering, and "pay to play" schemes involving Jefferson Parish President Aaron Broussard and his administration. This defamatory sting was first published by New Orleans area news media including WVUE Television and the Times-Picayune newspaper, and was picked up, elaborated, and republished by the defendants. The Time-Picayune, for one, has retracted its publications.

21. Second, there is the clear imputation that the plaintiffs misled investors and court officials in litigation with the Atlantic Canada Opportunities Agency (ACOA). The sting here is that Charles Leary perjured himself, investors were misled, businesses nefariously changed ownership, and that the ACOA litigation is ongoing, with the plaintiffs loosing every step of the way.

22. Third, there is the imputation that the Trout Point Lodge business is actively failing, near bankruptcy, having once relied on the good graces of Aaron Broussard. There is also the related imputation that the personal plaintiffs have had a series of failed businesses that used other people's money, creating a pattern. The sting is that the plaintiffs' 13-year old business is on the verge of bankruptcy, that the plaintiffs will take the money and run, and that the plaintiffs are either con artists or have no business acumen whatsoever.

23. <u>Finally, there is the unabashed anti-gay, anti-homosexual rhetoric and rants of the defendants.</u> <u>This rhetoric is used to amplify and support the three other stings listed above. It enters every</u> <u>aspect of the defendants' multiple publications, in an obvious attempt to speak to those who</u> <u>harbor bigotry and hatred towards gays, like the defendants. Saying anti-gay things supports and</u> <u>shores up all the other defamatory imputations.</u>

24. The defendants <u>also</u> encouraged others to write anti-gay and homophobic rhetoric & innuendo. <u>At all relevant times, slabbed contained comments based on Leary and Perret's</u> <u>perceived sexual orientation. Those comments were meant to be derogatory and insulting.</u> <u>These slabbed publications engendered discrimination and hatred, and were intended by the</u> <u>defendants to do so.</u> As part of this rhetoric, the defendant Handshoe's publications referred to plaintiffs Leary, Perret and their business partner as "girls," <u>"blow buddies," "queer fag scum,"</u> and "bitches," published more than one reference to a gay-themed movie, and posted video clips of movies and music videos commonly associated with gay stereotypes.

25. The Plaintiffs say that when references to an individual's sexual orientation are made in a derogatory way in the context of defamatory publications, those references are themselves defamatory and an invasion of privacy. The defendant published in such a way as to encourage hatred and contempt for gay individuals, and to encourage negative stereotypes.

26. The defendants' blog posting publications were downloaded and read in Nova Scotia by the personal plaintiffs and others, including but not limited to Trout Point Lodge employees, persons at the Stewart McKelvey law firm in Halifax, <u>persons in the employ of Nova Scotia-based Frank</u> <u>magazine,</u> and guests of Trout Point Lodge living in Nova Scotia.

27. In blog posts published in August, 2011, the defendant also admitted to having a Nova Scotia audience and to receiving communications from persons in Nova Scotia.

28. The plaintiffs say that starting on February 6, 2010, the personas known as "Telemachus" and "unslabbed" (Boudreaux) revived the issues raised in previous defamatory publications by media organizations, including by the Times-Picayune and WVUE Television.  Immediately after hyperlinking to a letter from Trout Point Lodge published online at the Internet home of the Times-Picayune, nola.com, Telemachus stated as a matter of fact that "The TP [Times-Picayune] wrote a correction that made it seem like everything reported about Nova Scotia was false. Well it wasn't." This statement is defamatory in that it referred to the Plaintiffs in the context of an implied coverup of the truth about the Broussard scandal by media organizations, and  implicated

the plaintiffs' involvement in a political corruption scandal.

29. The Plaintiffs say that in general references on the slabbed blog to "Nova Scotia" or Aaron Broussard's Nova Scotia properties within the context of the "Jefferson Parish political corruption scandal" include an implicit reference to the Plaintiffs, particularly given Telemachus' public repudiation of the Times-Picayune retraction. Sop81_1 (Handshoe), Telemachus, and unslabbed (Boudreaux) continued the defamatory innuendo that Trout Point Lodge was Aaron Broussard's property and/or business, involved in shady dealings, and the front for a criminal enterprise.

30. Defendant Handshoe defended (and continues to defend) all of his publications and stated on August 30, 2011, that he "cannot lie." He also publicly stated publications on his blog were based on "evidence" gained in the process of a "search for the truth." The Plaintiffs say that all the defendants' publications were statements of fact and not of opinion, and that they would tend to lower the esteem held for the plaintiffs in the eyes of other reasonable people.

31. On March 8, 2010, in a "comment" post, unslabbed (Boudreaux) made reference to WVUE Television and its reporter Val Bracy. She stated that WVUE/Louisiana Media was being sued by the Plaintiff, which at that time was not true. WVUE had just been served with the plaintiff's Notice of Intended Action in an attempt to get a retraction.

32. "unslabbed" continued in the same publication to use words:

--mocking of the Plaintiffs

--implying that any investors the Plaintiffs might have are illegitimate or suspicious

--stating that the plaintiffs had filed a frivolous lawsuit

--stating that the Plaintiffs had knowingly sued an incorrect party

--stating that the plaintiffs had illegitimately "silenced" the free press

--implying that the plaintiffs feared investigation by the press


33. On November 16, 2010, Telemachus revived the subject of "Nova Scotia," which by that time was a code word known to slabbed readers by innuendo to reference the Plaintiffs and their alleged connections to Aaron Broussard, in the context of a federal criminal investigation.

34. On February 16, 2011, Telemachus and Defendant Handshoe republished the entirety of a defamatory January 10, 2010, Times-Picayune article that had been removed from publication and/or retracted by that newspaper. The "Mystery on the shores of Nova Scotia may be

uncovered by ethics board" article written by Richard Rainey contained defamatory innuendo about the plaintiffs, made false statements of fact, and had little if any journalistic value. The article also linked the Broussard scandal to investigations of government deals involving waste disposal contracts, particularly with a company called River Birch. Telemachus was, in addition to making a publication referring to the Plaintiffs that would tend to lower their esteem in the eyes of ordinary people,  also reviving in February, 2011, the whole gamut of defamatory implications and innuendo first appearing in January, 2010, which the Plaintiffs had worked so hard to have retracted by established media organizations.

35. Telemachus as published by Defendant Handshoe then continued to draw Charles Leary, Vaughn Perret, and Daniel Abel personally into the defamatory context, mentioning them and their business entities by name.

36. The stings of the defamation had by February, 2011, actually increased over January, 2010, as Mr. Broussard was then publicly known to be the subject of a "target letter" from the Federal Bureau of Investigation, and at least one federal indictment involving River Birch had been handed down.

37. Telemachus concluded his post by suggesting that the Plaintiffs belonged in the proverbial "woodpile" along with Broussard and others publicly implicated in the scandal. It is notable given the homophobic rhetoric of slabbed's publications that a bundle of sticks intended for burning is a "faggot."

38. On February 20, 2011, unslabbed  (Boudreaux) imputed that subpoenas issued to Jefferson Parish government officials in the federal investigation would result in Grand Jury testimony regarding topics such as Aaron Broussard's Nova Scotia properties (by imputation, based on previous impressions created by the Defendants, including the Plaintiffs) in connection with charges of wire fraud, payroll fraud, and conspiracy.

39. On February 21, 2011, Telemachus again referred to the Plaintiffs in the context of the Broussard scandal and published suspicions about the Plaintiffs' connections to persons— including public officials-- allegedly implicated in the River Birch scandal and the federal investigation.

40. On February 24, 2011 unslabbed (Boudreaux) implicated the plaintiffs in Nova Scotia as being the ultimate recipient of millions of dollars in monies paid by Jefferson Parish, while under Broussard's direction, to government waste disposal contractors.

41. On February 25, 2011, Telemachus as published by Handshoe brought up the January 6, 2010 television broadcasts of WVUE. He/she implied that WVUE's journalistic investigation and broadcasts, which referred to the Plaintiffs, resulted in Aaron Broussard's resignation, implying in turn that there was something sinister or mysterious about Broussard's Nova Scotia properties, including, incorrectly, the Plaintiffs' property.

42. On March 2, 2011, Telemachus as published by Defendant Handshoe again raised WVUE's broadcasts of the interview by reporter Val Bracy of Mr. Broussard, referred to his Nova Scotia properties, and implied that he resigned due to the broadcasts, the proverbial smoking gun.

43. In April, 2011 the defamatory publications of the defendants increased in tenor, detail, and frequency.

44. Defendant Handshoe as user Sop81_1 published the following on slabbed.wordpress.com on April 26, 2011 in a post entitled "Slabbed takes a look at the Trout Point business venture: Let's start at the end and work back":

45. "In researching this story what I have found is a pattern of Leary, Abel and the girls being first class bitches and I think it is safe to assume based upon the retractions they made the Times Picayune and its corporate parent their bitch in this fiasco because Rainey was onto something big, albeit a bit dated in the fleecing of several local individuals that were marketed and sold ownership in the Trout Point by Aaron Broussard, who had close personal and business ties to Abel, Leary and the girls." Richard Rainey was a reporter for the Times-Picayune newspaper.

46. The plaintiffs say that stating publicly that Leary demonstrates a pattern of being a "first class bitch" would tend to lower the esteem reasonable persons hold for the personal plaintiff. The Plaintiffs further say that Plaintiff Perret was identified by the Defendants as one of "the girls," and was therefore similarly being referred to.

47. Stating that the plaintiffs were involved in a "fiasco," "something big," which was the "fleecing of several local individuals" is defamatory. To fleece a person is equivalent to committing fraud and/or extortion, a crime.

48. The defendant published in the same post: "Leary, Perret and Abel were trying to use the Canadian Libel laws to strong-arm the Picayune and their parent Advance Publications;" and "Leary and the gang thought they buried the story."

49. Stating that the plaintiffs used Canadian law and the Nova Scotia judicial system for an ulterior or improper purpose is defamatory. Stating that the plaintiffs worked against freedom of

the press, "strong-arming" a prominent daily newspaper, the Times-Picayune, is defamatory.

50. In the same blog post of April 26, 2011 at the url
http://slabbed.wordpress.com/2011/04/26/slabbed- takes-a-look-at-the-trout-point-business-
venture-lets-start-at-the-end-and-work-back/#more-29053, the defendant wrote and published:

> I think by now even our most casual readers know our successor website,
> **slabbed.org was knocked offline courtesy of the Times Picayune's** corporate parent
> **Advance Publications** and this started a chain of events that resulted in Slabbed
> temporarily being moved back to WordPress. I'd submit this was a miscalculation of
> gargantuan proportions for several reasons, which will become clear as I roll out this
> series of posts on Aaron Broussard's connections to Trout Point Lodge and its purported
> owners, Charles Leary, Danny Abel and Vaughn Perret. I say purported because others
> were sold 2% ownership interests in the Trout Point development as touted by Broussard
> and those folks are the bagholders in this deal.

51. The Plaintiffs say this publication is defamatory in that the defendant stated that the personal
Plaintiffs were not the owners of Trout Point Lodge, and that they were in fact the bag holders in
illicit deals involving Aaron Broussard. To be a bagholder or bagman is to be an illegal and false
front for illegal money collection or racketeering, a crime.

52. The defendant published the following in the same blog post, regarding a now-settled
proceeding in the Supreme Court of Nova Scotia involving one of Plaintiffs Leary & Perret's
former businesses: "Like I said one of the sticking points was the disclosure of the owners of La
Ferme D'Acadie, which Leary claims is the Dairy Farm portion of the Nova Scotia operations
and despite the fact Abel's name evidently appeared on the paperwork to get the loan Leary was
insistent Abel was not involved and the gyrations are simply stunning as we continue from the
court opinion:

> The applicant claims that broken pipes caused a flood in his home during the winter
> of 2002, resulting in the destruction of documents. In August 2005, Hurricane Katrina
> wiped out the office of Daniel G. Abel, who was Mr. Leary's Louisiana attorney and
> business associate. The applicant maintains that he kept records of the partnership's
> dealings with the plaintiff, as well as other business records, at this location. In the spring
> of 2006 a break-in at Trout Point Lodge in East Kemptville, NS, resulted in the theft of a

safe containing certain documents related to the transactions which are the subject of this
proceeding.

Obviously there is a huge problem here – that of a liar or in this case a perjurer keeping his
lies straight. Now maybe there was a bust pipe that took out vital records and maybe someone
took time to drive to the middle of nowhere to steal the safe from a resort that was obviously not
doing well financially.  But Abel losing his records to Hurricane Katrina? Really Charles?

The judge did not appreciate Leary's arguments either and must have laughed him out of
court."

53. Publishing that Leary lied to a justice of the Supreme Court of Nova Scotia, <u>was laughed out
of court,</u> and committed perjury is defamatory. Perjury is a crime.

54. Publishing that Trout Point Lodge was not doing well financially is defamatory of the
corporate plaintiff. <u>Public reports of poor business performance would tend to lower the esteem
of the corporate plaintiff in the eyes of a reasonable person.</u>

55. On April 28, 2011, the defendant published on the topic of the personal plaintiffs' Costa Rica
business Cerro Coyote, S.A. The defendant compared the personal plaintiffs and their business
partners to the known criminal Bugsy Siegel and accused them of fraud. This publication is
defamatory.

56. On June 1, 2011—after being served with a Notice of Intended Action—the defendant
published a post entitled "From the reader mailbag: Nova Scotia, Paulsen v State Farm
and Redflex."

57. In the above-named post, the defendant Handshoe as Sop81_1 published: "Question: What is
going on in Nova Scotia?

Answer: Much of nothing good as business fell off drastically at chez girlz in 2010 when
Aaron Br0ussard was forced from office in disgrace."

58. The Plaintiff says that publishing that the plaintiffs' business "fell off drastically" in 2010 is
defamatory of the corporate plaintiff as well as the personal plaintiffs who are its day to day
managers. Publishing that a fall off in business was somehow connected to Aaron Broussard
being forced from his political position in disgrace is also defamatory in that it closely connects
the plaintiffs, their business dealings and fortunes, with the Aaron Broussard scandal. <u>This would
tend to lower the esteem held for the plaintiffs in the eyes of reasonable persons.</u>

59. In the same blog post, the defendant published the following as statements of fact:

The girls were the idea mongers in this equation but beyond Danny Abel in his heyday with Wendell Gauthier they evidently had champaign [sic]tastes on a beer budget.  Broussard was the hypester for the 3 ventures and he raised money from select members of the general public to turn these ideas into bricks and mortar reality.  The plans were in reality hatched not born of any sense of practicality as the market has passed judgement on the girl's plan and execution of it and the verdict is not good.

60. Stating that the personal plaintiffs had Champagne taste on a beer budget is defamatory. It impugned the business experience and acumen of the personal plaintiffs. The post also implied that the sole reason the plaintiffs' businesses started and survived was due to Aaron Broussard and his allegedly illicit activities. The post also stated that the market had looked unfavorably on the plaintiffs and that the plaintiffs were not practical business people or professionals.

61. In the same blog post, the defendant published: "Perret left his momma in good hands though as Danny Abel looked after her as a surrogate son after ol' Vaughn split years ago."

62. This publication is defamatory of plaintiff Perret as it implies that he abandoned his mother, --"splitting"--leaving Louisiana for selfish purposes, and placed Daniel Abel as her surrogate son.

63. On August 3, 2011, the defendant Handshoe published a blog post with the headline "I've just been informed. ...."

64. In this publication, the blog post was "tagged" with the following, including hyperlinks: Aaron Broussard, Atlantic Canada Opportunities Agency, Charles Leary, Danny Abel, Jefferson Parish Political Corruption Scandal, La Ferme D'Acadie &. Charles Leary v. The Atlantic Canada Opportunities, Trout Point Lodge, Vaughn Perret.

65. In this publication, the defendant Handshoe wrote about " **Trout Point Lodge** and its connections to the Jefferson Parish Political Corruption Scandal."

66. The plaintiffs say that this publication is defamatory in that it further linked the plaintiffs with alleged political corruption, including criminal acts. The Plaintiffs further say that the defendant further implicated the plaintiffs in involvement with legal proceedings in Louisiana with which the plaintiffs have no connection.

67. On August 15, 2011 in a post entitled "Actually Matt, you had this one called right to begin with. Slabbed travels back in time with the girls and ties a few things together. A Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update Part 1," Defendant Handshoe again

linked and identified the plaintiffs with the Jefferson Parish political corruption scandal. This is defamatory.

68. In this post, Defendant Handshoe implicated the plaintiffs in "ordinary citizens losing their basic constitutional rights under the ruse of Tort Reform" including the "stripping" of ordinary citizens across this country of their constitutional rights." This is defamatory.

69. Defendant Handshoe identified Perret and Leary as members of the group he identifies in a derogatory way as "the girls." The Plaintiffs say that Handshoe linked "the girls" with "child molesting catholic [sic] priests," and with political corruption.

70. Defendant Handshoe wrote: "Abel was a good lawyer but his heart lay elsewhere in the world of cooking and hospitality and it is there he intersected with Charles Leary and Vaughn Perret as he funded their failed business ventures to his own financial detriment." This writing states that the plaintiffs business ventures were "failed" and that they were funded by their partner Daniel Abel to his detriment. This would tend to lower the esteem held by reasonable persons for the plaintiffs as business people and professionals.

71. On August 17, 2011 in a post entitled "Laissez les bons temps rouler! Slabbed travels back in time with the girls and ties a few things together. A Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update Part 2," Defendant Handshoe wrote and published that "the girls work as a unit to grift their way through life." The personal plaintiffs were identified by Handshoe as part of this group. "To grift" is to obtain money or property illicitly. This is defamatory of the personal plaintiffs and accuses them of criminal activity.

72. In the same post, Handshoe wrote: "shape shifting is common for the girls as the reported ownership of the Trout Point Lodge and Dairy Farm has also magically morphed through time as we'll explore in a later post." Defendant Handshoe continued to write about "the trail of scams and political corruption that leads to Nova Scotia and Trout Point Lodge." This is defamatory.

73. On August 18, 2001 Defendant Handshoe published a post entitled: "First class bitches, common thugs or plain ol' morons: The Girls at Trout Point Lodge sue Fox 8 and Slabbed. A Trout Point Lodge /Jefferson Parish Political Corruption Scandal Update." This is defamatory in that it refers to the plaintiffs as "first-class bitches," "common thugs," and/or morons and it links the plaintiffs to and identifies them as part of the Jefferson Parish political corruption scandal. It also attempts to link slabbed and the television station Fox 8 WVUE as though slabbed were equivalent to a news media organization.

74. Handshoe referred to the plaintiffs as the "litigitious [sic] bunch at Team Girls/Trout Point." This is defamatory. To be litigious would tend to lower the esteem reasonable people would hold for the plaintiffs.

75. Handshoe wrote: "Later I will post an official statement from Slabbed New Media LLC and put up a new page titled "So You Want to Sue Slabbed" which will give some elemental instruction on how to properly execute service of process etc. Click the pic to get the latest screed from the girls while I prepare the next installment connecting Trout Point Lodge to the Jefferson Parish Political Corrutpion Scandal. ~ sop." This is defamatory.

76. Defendant Hanshoe on or around August 18, 2011 published on the slabbed blog a page entitled "So you want to sue slabbed." Here he referred to "an elite fraternity of crooks, miscreants and various and sundry other individuals I've managed to piss off writing this investigative blog." The Plaintiff say that this statement refers to the plaintiffs and is defamatory.

77. In an August 19, 2011 comment connected to the above post Defendant Boudreaux referred to the personal plaintiffs as "douche-bags." This is defamatory.

78. Defendant Boudreaux also referred to this legal action as foolish and frivolous. This is defamatory.

79. On August 25, 2011 Defendant Handshoe published a "comment" from "Novell Ecosse." It read: "Please whack me upside the head with an obvious stick. Three men register a business and borrow money to develop and market said business. Once money is in the till, they dissolve the business and don't tell the lender. Sounds like fraud to me. Then two start up a new business and the new name gets all the marketing and promotion the money for the dissolved business received." The Plaintiffs say that this comment refers to the plaintiffs. It is defamatory and accuses the plaintiffs of involvement in fraud, a crime.

80. On August 24, 2011, Defendant Handshoe published material entitled: "The problem with lying is keeping all of them straight. A Jefferson Parish Political Corruption / Trout Point Lodge Scandal Update Part 3." This is defamatory. It accuses the plaintiffs of lying in public and identifies them with the Jefferson Parish scandal.

81. In this post, Defendant Handshoe wrote:

> There is no doubt the timing of **Rich Rainey's series of articles on Trout Point Lodge and Aaron Broussard's connections thereto** could not have come at a more

inopportune time for the three owners of the lodge, Danny Abel, Charles Leary and Vaughn Perret. While Rainey focuses his articles on the curious Nova Scotia connection involving Broussard and the complaint to the Louisiana Ethics Commission, Rainey's articles contained some damning evidence of potential wrongdoing involving Leary and Perret in Canada and it had nothing to do with Broussard per se. In fact I'd submit to this day neither Rich Rainey or his employer know real reason why Leary and Perret went postal on them after his story on Trout Point appeared in January, 2010 but that changes today.

82. This is defamatory in a number of respects. It states that January, 2010 publications of the Times-Picayune newspaper came at an inopportune time for the plaintiffs, implying that the plaintiffs were secretly getting away with illegal or illicit activity that was uncovered by the newspaper at a bad time. It states that the newspaper articles contained damning evidence about the plaintiffs' wrongdoing. This is defamatory and also makes no reference to the newspaper's published retractions, thereby misguiding readers with wanton disregard for the truth. The Defendant Handshoe stated that the plaintiffs "went postal," implying that they had a violent and irrational overreaction to publications about them. This is defamatory.

83. Defendant Handshoe continued to write: "the subject of ownership in the various girly business ventures is a touchy subject with Team Trout Point." This is defamatory and continued the innuendo of coverup or mystery established by the defendants in earlier publications.

84. Handshoe writes that plaintiff Perret and his business partner Abel "are dodging service of process." This is defamatory.

85. Handshoe writes that "The dispute was the crash and burn of the Nova Scotia boutique farm and rolling over some of the money into Trout Point." This is defamatory of all plaintiffs.

86. Defendant Handshoe wrote: "At this point Leary has lost at every point of the proceedings in Nova Scotia." and "He was compelled to disclose the names of the owners in La Ferme d'Acadie and produce records in the Canadian equivalent of discovery." These statement are defamatory. Defendant Handshoe's publications made no reference to the May, 2010 settlement and discontinuance in the referenced litigation, part of the public record accessible to him, of which he was aware or would have been aware had he conducted the most basic of inquiries. The Defendant's publications imply that the plaintiffs were in August, 2011 still in active litigation with the Atlantic Canada Opportunities Agency. This is defamatory. Defendant Handshoe's

publications on the consequences of decisions of the Supreme Court of Nova Scotia and the Nova Scotia Court of Appeal are incorrect. Stating that Plaintiff Leary was compelled to do things he was not compelled to do is defamatory. In all, Handshoe creates a defamatory innuendo regarding Nova Scotia court proceeding involving the plaintiffs, portraying them as fraudsters, obstructionists, litigious, and unprofessional. This is defamatory.

87. Defendant Handshoe continued to write: "The problem here is lots of inconsistency in the public record but inconsistency is the only constant with the girls." This is defamatory and again imputes that the plaintiffs have misled others.

88. Defendant Handshoe republished a portion of a New Orleans Times-Picayune article, which continues the innuendo that the plaintiffs were involved in Jefferson Parish political corruption, federal felons, and shady dealings. This is defamatory republication of retracted material for which the plaintiffs hold Defendant Handshoe responsible.

89. Handshoe wrote: "in reality Rainey was 100% factually correct in his reporting." This is defamatory, taking retracted material referring to the plaintiffs and labeling it as factual. Handshoe then again implies Plaintiff Leary committed perjury. This is defamatory.

90. Handshoe continues in the same post to write about Plaintiff Leary's "dishonesty inherent to his dealings with the Nova Scotia court system." This is defamatory.

91. Also during April, 2011, the defendant Handshoe published the following comment by "Unslabbed" (Boudreaux) on more than one occasion:

"Oh my , what a tangled web we weave when first we endeavor to deceive.

Welcome to Slabbed Danny and Carlie and Charlie and Vaughnie and any of you other Special Guys of Trout Point and Wild West.

Now I am VERY curious and inquisitive about you…and ALL your BUDS.

May I suggest BOYS that you all huddle quickly and decide if the Inquisition sure to follow continued attempts to GAG the Slabbed Nation is worth the information which will be elicted [sic] in protracted legal battles on all continents. Please remember that many of us enjoy Dual Nationalities, Counsulate [sic] Immunities, and have LONG REACHING tentacles … perhaps longer than yours , although size is not really that important unless you are on the receiving end.

If I were you BOYS I would keep my head down, not bend over to pick up the soap and ride my horses into the sunset on Brokeback Mountain.

I, one Slabbed Nation member, vow to search you all out to the ends of the earth ( Yes in Switzerland, Hawaii, France, Italy, Canada and Spain ) anywhere any of you have any connections.

I have the time, temperament and now the impetus to set myself to this task. Hold on, it may be a bumpy ride for some of you.

See ya soon, Cowboys.

92. The Plaintiffs say that this publication is a threat and is replete with anti-gay and homophobic rhetoric and innuendo. It is defamatory in that it states that the plaintiffs endeavor to deceive third parties and the general public about their business activities and personal lives, something that would lower the esteem reasonable persons would hold for the plaintiffs.

93. The Plaintiffs say that the defendants acted with express malice in making their publications.

94. In particular, the Defendant Handshoe blamed the Plaintiffs for causing him to loose the host for his new web site with the url slabbed.org. The Plaintiffs say that the series of posts published by the defendant are intended as revenge, motivated by malice.

95. In late August, 2011, defendant Handshoe admitted in an interview with Andrew Speller of Frank magazine that he had been "screwing with" the plaintiffs through his blog. "Screwing with" the plaintiffs indicates malice. He also admitted having been given notice of intended action, and to having published the text of court documents commencing the action against him on slabbed.

96. On August 30, 2011, Defendant Handshoe authored and published a post entitled: "About the chances that Trout Point Lodge will be bankrupt within a year….."

97. Defendant Handshoe wrote: "Obviously the girls at Trout Point Lodge do not have a stellar business record folks from their failed Washington Parish Exotic Cheese Farm to the defunct Nova Scotia Dairy farm to the ill fated Cerro Coyote Hotel project, all of which were at least partially paid for with other people's money. After Aaron Broussard's fall from grace and the end of pay to play Nova Scotia style things just got plain worser for the girls at Trout Point who tried everything, from marketing the lodge as gay friendly to rolling out all the PR stops."

98. The above publication is defamatory and impugned the business performance of the plaintiffs since 1990. It also ties the plaintiffs business success to monies flowing from political corruption involving Aaron Broussard. It imputes that third parties paid for the plaintiffs business holdings. These sentences combined with the title are intentionally and maliciously designed to

damage the plaintiff's reputation.

99. Defendant Handshoe wrote: "the lodge, which is stuck out in the middle of no where. " This is defamatory, a statement of fact that would lower the plaintiff Trout Point Lodge's esteem in the eyes of reasonable persons reading Handshoe's publication.

100.    Defendant Handshoe states that the Plaintiff Trout Point Lodge advertises heavily on TripAdvisor. This is defamatory, and untrue, designed to make it appear as though the plaintiff is in dire economic straights and has resorted to drastic measures to advertise.

101.    Defendant Handshoe further states: "The real score is it appears Leary and his blowbuddy Vaughn Perret are so paranoid they're willing to piss off members of the media in order to maintain the illusion of editorial control about what is written about their business ventures, especially the scams and the ones that didn't work out.

As always Slabbed reports you decide and stay tuned because we'll have more on the girls at Trout Point and their nefarious business practices.

sop"

102.    This is defamatory in that it refers to the plaintiffs business practices as nefarious. Nefarious means flagrantly wicked. To say that the personal plaintiffs are paranoid is defamatory, as is the statement that they anger "members of the media." To call the plaintiffs "blowbuddies" is a further example of the defendants use of discriminatory remarks targeted at perceived homosexuals.

103.    On August 31, 2011 a comment from "Kidd" published by Handshoe stated of the personal plaintiffs: "Damn! Queer (as in goofy as hell) fag (as in deviant perverts) scum (as in lawyers): again, queer fag scum!" This is defamatory.

104.    The Plaintiffs further say that both Defendants were malicious in their writings and publications based on discriminatory, hateful, anti-gay attitudes.  In these publications, the defendants exhibit hatred and contempt for gay people.

105.    The Plaintiffs also say that the defendant created an innuendo of "cover-up," mystery, and grandiosity to events surrounding retractions published by the Times-Picayune newspaper as well as the plaintiffs' business activities.

106.    On April 27, 2011, the defendant wrote: "And then one week and a day ago things changed with this Trout Point thing rearing its ugly head."

107.    On April 20, 2011, the defendant wrote: "It's never 'the crime' but the coverup that often

lands people in hot water. The powers that be hung reporter Rich Rainey out to dry on his reports on Trout Point Lodge." On April 18, 2011, the defendant published that "the Times Picayune tried to shut us down." In another "comment" blog post, the defendant published: "Left with little choice I agreed to delete the content on Slabbed.org so I can get control of my blog back. I will not be deleting the content here and in fact we're going to examine not only the retracted story in detail but the players involved including Danny Abel, Charles Leary, Vaughn Peret and their Trout Point Lodge. . . . The Times Picayune rolled over and played dead on this. We're not."

108.    The defendant Handshoe continued: "if the T-P wants a war I gotta be able to fight it without worrying if my web host will pull the rug out from under me."

109.    On April 28, 2011, the defendant Handshoe published: "Bit by bit and slice by slice I'm determined to reveal the truth behind Trout Point. Rich Rainey would have but his employer is a pussy."

110.    On June 21, 2011 Handshoe published the further threatening headline: "Trout Point here we come. ..."

111.    The defendants created the innuendo that there was a grandiose coverup involving the plaintiffs, a major daily newspaper, and its law firm, which consisted of "a war" against the defendants and the silencing of investigative reporter Richard Rainey, among others. The defendants created the innuendo that the plaintiffs were involved with "the powers that be" in an effort to "gag" the defendants' publications.

112.    The defendant Handshoe was under the impression and conveyed to readers that he was part of the "News Media."

113.    The defendants' publications were replete with inaccuracies and an apparent inattention to basic ethics and duties to check facts before publishing.

114.    The defendants never contacted the plaintiffs for information before any of their repeated Internet publications about the plaintiffs, which extended from January, 2010 to at least August, 2011 and were all in continuous publication.

115.    The false statements set forth in the defendants' publications exposed the plaintiffs to public contempt, ridicule, aversion and disgrace, and induced an evil opinion of the plaintiffs in the minds of right-thinking persons and deprived the plaintiffs of their friendly intercourse in and commerce with society.

116.    In their writing and publishing activities the defendants acted and continue to act in a reckless and malicious manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible writers, editors, and publishers. The Defendants practiced a total disregard of the consequences, and acted without caring whether the content that they published around the world was true or false. This was malicious conduct arising from the Defendants not having made easily-accomplished & reasonable inquiries into the truth about the Plaintiffs, from unsubstantiated conspiracy theories about "the powers that be," and from an intentional refusal to give weight to retractions of previous news media reports. The means or sources to discover the truth were readily available to the Defendants. Alternatively, the Defendants deliberately refrained from making any inquiry whatever.

117.    The Plaintiffs state that at all relevant times they were not subjects of public interest.

118.    Allegations, imputations, and innuendo created by the Defendants about the Plaintiffs were serious, involving allegations of illicit, unethical and clearly criminal activities. There was no urgency in making publication. The Defendants did not identify sources or use reliable sources, or if its sources were reliable, the defendants did not take due care in representing what those sources actually said. The defendants published anonymously and intentionally allowed others to do so. The Defendants did not fairly represent the Plaintiffs' side of the story. The various defamatory statements, imputations, representations, and innuendo were unjustified and unjustifiable.

119.    The defamatory publications never indicated, expressly or implicitly, that words published as truths had not been verified.

120.    The Plaintiffs are entitled to punitive & exemplary damages for defamation in an amount to be determined.

**Invasion of Privacy; Conspiracy to Invade Privacy**

121.    The personal plaintiffs do not know the defendants and have never had contact with them, except for hiring someone to serve process on them in the context of this action.

122.    The personal plaintiffs are not public figures and lead private lives. The fact that the personal plaintiffs are gay, have made previous claims of discrimination based on their sexual orientation, or advertise Trout Point Lodge as a gay-owned business, did not invite the defendants or others into the realm of their personal lives or their bedrooms.

123.    The Plaintiffs say that Defendant Handshoe's repeated statements that because the plaintiffs publicly advertised their business as gay-owned, that therefore they should be barred from claiming discrimination —because they have already said that they are "queer," to use language approved and published by Defendant Handshoe--is non-sensical except to a bigot. Identifying oneself as gay does not, in Canadian society, allow the defendants to invade the plaintiffs privacy or conspire with others to do so.

124.    The defendants actions beyond their defamatory publications have harmed the personal plaintiff's dignity interests and personal autonomy; they have also experienced embarrassment and mental distress due to the defendants' action. The damages claimed do not depend upon publication or publicity issues described above as defamatory.

125.    In particular, the defendants' conduct based on the plaintiffs' sexual orientation is an invasion of privacy. The sexual orientation of the plaintiffs is a private matter. What the plaintiffs do or do not do in their bedroom is a private matter. The defendants have violently and flagrantly damaged the privacy interests of the plaintiffs. This invasion of privacy goes beyond publicly referring to someone as gay or homosexual—which may or may not be defamatory—and extends into the realm of illegally exposing the private lives of the plaintiffs, including their sexual preferences, personal history, business & life decisions, alleged credit worthiness, place of residence, and national origin as separate and apart from any defamatory publications.

126.    In addition, the plaintiffs say the defendants have conspired amongst themselves and with others to invade the plaintiffs' privacy, and have used inter-state and international means of communication to so conspire.

127.    The conspiracy occurred outside the bounds of making any defamatory publications listed above.

128.    The Plaintiffs say that all any reasonable person has to do in order to understand the invasion of privacy in this action is to substitute racial or religious epithets for the homophobic remarks, attitudes, and stereotypes of the defendants.

129.    The Plaintiffs say that identifying oneself as gay, or identifying one's business as gay-owned is not a license for invasion of privacy or a conspiracy to do so.

**Tortious Interference with Contractual Relations; Tortious Interference with Economic Relations; Injurious Falsehood**

130.   The Plaintiffs re-aver the paragraphs above and say that the defendants, motivated by admitted malice, intentionally published the defamatory statements above, which are falsehoods, in an attempt to injure the plaintiffs' businesses and their rightful commerce with society.

131.   The Plaintiffs also re-aver the paragraphs above and say that the defendants intentionally interfered with the plaintiffs' existing contractual relationships.

132.   In particular, the plaintiffs say that the defendants intentionally interfered with agreements the plaintiffs had entered into with the Atlantic Canada Opportunities Agency (ACOA) and with the defendants in Supreme Court of Nova Scotia case number Yar 328248 (2010), including the Times-Picayune newspaper. The Defendants thereby interfered with a discontinuance in the ACOA action and a consent order filed with the Supreme Court of Nova Scotia in Yar No 328248, re-igniting the content of disputes settled by mutual agreement and undoing, at least in part, the effect of a published retraction.

133.   The Plaintiffs further say that the defendants have caused actual damage to the plaintiffs' other contractual relationships in numerous ways, including: causing those with existing reservations to cancel those reservations and causing valued & experienced employees of the plaintiffs to re-evaluate their employment and future employment possibilities in ways damaging to the plaintiffs.

134.   Relatedly, as injurious falsehoods, the Plaintiffs say that Defendant Handshoe has intentionally or recklessly, with wanton disregard for the truth, misrepresented Leary & Perret's past dispute with the Atlantic Canada Opportunities Agency, as well as their counterclaims against said Agency. Publications about the ACOA litigation constitute a new area of innuendo and imputation designed to cause the plaintiffs injurious consequences in their home province. Falsehoods include statements and imputations that ACOA funds were misused and/or fraudulently misdirected to Trout Point Lodge. Not only is this untrue, it was never one of ACOA's claims.

135.   The Plaintiffs say that Defendant practiced misrepresentation with such wanton disregard to the facts that such misrepresentation was itself a falsehood.

136.   Another falsehood is that the registered ownership of partnerships and corporations in Nova Scotia changed through time in an illicit, criminal, or mysterious manner. This is untrue and was never one of ACOA's claims in its law suit.

137.   That Plaintiff Leary perjured himself is false and utterly maliciously-motivated.

138.    Defendant Handshoe intentionally and with malice misrepresented the published record of the ACOA matter, and portrayed events in an entirely distorted and untruthful way. He never stated that the matter was amicably settled, which is the truth.

139.    Defendant Handshoe's assertion that the ACOA litigation was ongoing in August, 2011 and that the plaintiffs had lost everything thus far in that proceeding was untrue. Handshoe intentionally failed to note Plaintiff Leary's winning of a "production order" directed at ACOA from a judge of the Supreme Court of Nova Scotia, and a decision from the Nova Scotia Court of Appeal that the lower courts "Disclosure Order be set aside in total to the effect that ACOA cannot rely on it to obtain any information from the appellants and the appellants may proceed to prosecute their crossclaim."

140.    Defendant Handshoe also failed to note the Court of Appeal published decision, the final piece of the public record of this case before amicable settlement, which stated of Appellant Leary and his claims:

> [22]    One can understand the appellants' exasperation and confusion with the way in which this case has unfolded. The record here is not stellar. At the hearing counsel for ACOA admitted that the process and progress to date has been "abysmal". I need not particularize its shortcomings in order to deal with what I see as the principal and narrow issues on appeal. Dr. Leary's excellent submissions make it clear that the appellants' complaints are hardly frivolous and deserve a hearing. However, the issues raised in their defence and counterclaim are matters to be determined at trial, where the evidence from both sides can be tested in the crucible of cross-examination on the witness stand. Our disposition of this appeal will clear away the procedural debris so that the parties may pursue their litigation, with dispatch.

141.    The Plaintiffs re-aver all the paragraphs above and state that the maliciously-motivated defendants intentionally sought to interfere with the plaintiffs' economic relations and have successfully done so, to the plaintiffs' detriment and monetary disadvantage.

142.    In particular, the defendants intentionally sought to cause those persons once desirous of custom with the plaintiffs to forego that custom. In addition, the defendants caused and excited persons in Nova Scotia to have a hateful attitude towards the plaintiffs and to act on those hateful feelings, causing the plaintiffs direct damage as well as damage to their non-contractual relationships with employees, friends, and neighbors.

143.   Finally, the defendants lied about the plaintiffs motivated by a desire to damage their commerce and intercourse with society.

144.   The defendants were successful in damaging the plaintiffs' custom and ability to attract investment from third parties for future projects.

145.   The defendants freely accessible Internet publications with their repeated use of the phrases "Trout Point Lodge" and "Nova Scotia" and the "tags" on the blog posts were intentionally designed to damage the plaintiffs' reputation on the Internet and ranking on search engines, and to ensure that the defendants' injurious statements appeared prominently in search engine queries about or related to Trout Point Lodge. This damaged the plaintiffs and their ability to attract custom, particularly as the Plaintiffs Trout Point Lodge depends on the Internet for a majority of its business.

146.   In particular, the defendants' injuriously false blog posts appeared prominently on search queries related to Trout Point Lodge in search engines such as Google and Yahoo.

**Intentional Infliction of Emotional or Mental Distress; Assault**

147.   The Defendants' blog postings were flagrant and outrageous conduct that was calculated by Defendant Handshoe to personally harm the plaintiffs Leary, Perret, and their close associates.

148.   The plaintiffs say that Leary & Perret had previously been the victim of threats, harassment, hate speech, trespass, and property damage while rural Louisiana residents based on their perceived sexual orientation. At one point a field at their Louisiana farm, near their residence, was set ablaze and the local fire department and Sheriff's office refused to respond and in contravention of the law failed to keep record of "911" calls. This incident and others were reported to the Federal Bureau of Investigation in 1996.

149.   Leary & Perret moved to Canada and started the Trout Point Lodge business precisely to avoid and distance themselves from such a hateful and discriminatory environment.

150.   Between April and August, 2011, Perret and Leary experienced anxiety, added stress, and sleeplessness as a result of the defendant's publications. Perret and Leary experienced physical symptoms of stress, for which he had to take medication.

151.   The plaintiffs say that both defendants intentionally created in plaintiffs Leary & Perret the apprehension of imminent harmful or offensive contact.

152.   On August 3, 2011, Defendant Handshoe published that: "the newest chapter of the Slabbed Nation has been formed in Nova Scotia."

153.    Plaintiffs Leary & Perret had and have a genuine fear of being physically interfered with after reading the defendant's publications. Leary & Perret believed that contact with the defendant or persons intentionally encouraged by the defendant was potentially imminent.

154.    The Plaintiffs operate an accommodation and foodservice enterprise that must remain open to the public at large for their livelihood. Security is difficult given the necessity of remaining receptive to the general public. The personal plaintiffs work personally every day in the business.

155.    The defendant repeatedly threatened physical contact and vengeance. In particular, the defendant referred to himself as a "ballbuster." The defendant wrote and published the bold-faced phrase "It's on" above an Arnold Schwartzenger "Terminator" movie clip, while referring to the plaintiffs. The defendant posted video clips with names such as "killing me softly," Terminator II, and "burning down the house," as well as biblical references to Ezekial 25:17, with its talk of vengeance, with audio taken from the violent movie "Pulp Fiction," and to the violent, vengeful acts depicted in a violent Bruce Willis motion picture with the caption "Yippi Ki Yay Motherfucker."

156.    The Unslabbed post quoted above directly advised each plaintiff to "keep his head down," threatened to "search him out to the ends of the earth," that it may be a "bumpy ride," and that Unslabbed, a member of the "Slabbed Nation," would "see you soon."

157.    Combined with the hate speech, homophobic, and anti-gay rhetoric and innuendo of the defendant's publications, Leary and Perret feared imminent contact and harm from obviously mentally unstable individuals from the deep south of the United States.

158.    Plaintiff Leary contacted the Federal Bureau of Investigation, the Human Rights Commission of Canada, the Nova Scotia Human Rights Council, the Royal Canadian Mounted Police (Yarmouth Rural Detachment), and the Internet Crime Complaint Center upon reading Unslabbed's (defendant Boudreaux's) publication on the defendant's slabbed blog.

159.    The Plaintiffs seek general, special, as well as exemplary and punitive damages plus costs.

PLACE OF TRIAL: YARMOUTH, YARMOUTH COUNTY, NOVA SCOTIA

DATED at Kemptville, Nova Scotia  this  1st September th day of ~~August~~, A.D., 2011.

Charles Leary representing himself
and Trout Point Lodge as agent &
officer

Vaughn Perret representing himself
and Trout Point Lodge as agent &
officer

TO: The Prothonotary, Supreme Court of Nova Scotia, Yarmouth, NS

TO: The Defendant

6

2011                                                    Yar No. 353654



Supreme Court of Nova Scotia

Between

Trout Point Lodge, Limited,

Charles Leary and Vaughn Perret

and                                                                Plaintiffs

Douglas K. Handshoe and Jane Doe

                                                                   Defendants

### Order for Judgment Against Douglas K. Handshoe

Before the Prothonotary, Yarmouth Justice Centre, appeared the Plaintiffs Trout Point Lodge, Limited, Charles Leary, and Vaughn Perret to request that in accordance with Nova Scotia Civil Procedure Rule 8.02 (1) the Prothonotary now grant default judgment against Defendant Douglas K. Handshoe. All of the following apply:

1. Douglas Handshoe is notified of the claim in accordance with Rule 31 - Notice;

2. the time for filing a defence is now expired under Rule 31 – Notice, having expired as of November 18, 2011;

3. no defence is filed;

4. the judgment is for damages only.

There is no bill of costs as the Plaintiffs will schedule a hearing for the assessment of damages. Proof of notification was previously filed, and a copy is attached hereto.

On the motion of Trout Point Lodge, Charles Leary, and Vaughn Perret, the following is ordered:

* **Default judgment is granted against Defendant Douglas K. Handshoe;**

* **In accordance with the Civil Procedure Rule 31.12(4), Douglas K. Handshoe is now taken to have admitted, for the purposes of this action, the claims made against him in the Statement of Claim;**

* **Douglas K. Handshoe is now disentitled to notice of anything in the proceeding, unless a Rule expressly provides, the parties agree, or a judge orders otherwise.**

Issued December 12, 2011

                                                    Elaine L. d'Entremont
                                                    Prothonotary

                                                    Prothonotary

┌─────────────────────┐
│      **EXHIBIT**       │
│                     │
│        "3"          │
└─────────────────────┘

7

2011

IN THE SUPREME COURT OF NOVA SCOTIA
BETWEEN:

Yar. No. 35365

NOVA SCOTIA

FEB 0 2 2012

Plaintiff

**Trout Point Lodge, Limited,** a *Nova Scotia Limited
Company,* **Vaughn Perret & Charles Leary**

- and -

**Doug K. Handshoe** and **Jane Doe**

· **Defendants**

ORDER

Before the Honourable Justice Suzanne Hood in chambers:

A motion was made by Trout Point Lodge, Charles Leary, and Vaughan Perret for assessment of
damages and injunctive relief against Doug K. Handshoe.

Having reviewed the affidavits of Charles Leary and Vaughan Perret, and having heard Charles Leary
and Vaughan Perret on behalf of the Plaintiffs in chambers, on the motion of Trout Point Lodge,
Charles Leary, and Vaughn Perret the following is ordered:

The Defendant Douglas K Handshoe of Mississippi as a joint and concurrent tortfeasor shall

pay to the plaintiffs the following damages:

- to Trout Point Lodge: $75,000 in general damages
- to Vaughan Perret, $100,000 in general damages; $50,000 in aggravated damages; and $25,000
  in punitive damages;
- to Charles Leary, $100,000 in general damages; $50,000 in aggravated damages; and $25,000
  in punitive damages;

as well as costs of $2,000.

In addition, I order a permanent injunction to issue against the defendant, Douglas K.
Handshoe, restraining him from disseminating, posting on the Internet or publishing, in any manner
whatsoever, directly or indirectly, any statements or comments about the plaintiffs, Trout Point Lodge,
Charles L. Leary, and Vaughan J. Perret. This injunction shall include the publication, circulation and
promotion on the blog named Slabbed, and any similar or other publications. For further particularity,
the defendant shall not publish or cause to be published or otherwise disseminate or distribute in any
manner whatsoever, whether by way of the Internet or other medium, any statements or other
communications which refer to the plaintiffs by name, depiction or description.

I also order a mandatory injunction to issue against the above-named Defendant regarding continued
publication in any manner whatsoever, whether by way of the Internet or other medium, any statements

IN THE SUPREME COURT OF NOVA SCOTIA
I hereby certify that the foregoing document
is a true copy of the original.
Dated _7_ day of _February_ _2012_

Prothonotary
Elaine L. d'Entremont
Prothonotary

**EXHIBIT**

tabbies

**"2"**

or other communications which refer to the plaintiffs by name, depiction or description. All such material is hereby ordered to be immediately removed from publication.

Issued February 2 , 2012

Elaine L. d'Entremont
Prothonotary

Prothonotary

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing Record Excerpts of Appellants has been filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit via the court's CM/ECF filing system which sent notification of same to the following:

<u>Counsel for Appellee</u>

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi  39466
Email: ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA  70433
Email: mail@truittlaw.com

This the 20th day of February, 2013.

s/ Henry Laird