NO. 13-60002


UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

TROUT POINT LODGE, LIMITED, A Nova Scotia Limited Company;
VAUGHN PERRET AND CHARLES LEARY, APPELLANTS

Versus

DOUGLAS K. HANDSHOE, APPELLEE
_____

ON APPEAL FROM THE SOUTHERN DISTRICT
OF MISSISSIPPI SOUTHERN DIVISION


_____


BRIEF OF APPELLEE, DOUGLAS K. HANDSHOE

_____

**THE TRUITT LAW FIRM**
A Limited Liability Company
JACK E. TRUITT, LA. BAR NO. 18476
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for Appellee, Douglas K. Handshoe

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in Rule 28.2.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal. Parties in interest are:

1. Trout Point Lodge, Vaughn Perret, and Charles Leary (Appellants), 140 Trout Point Road, Kemptville, Nova Scotia BOW1Y0.

2. Doug K. Handshoe (Appellee), 345 Carroll Avenue, Bay St. Louis, Mississippi 39520.

3. Chief District Judge Louis Guirola, Jr., 2012 15th Street, Suite 814, Gulfport, MS 39501.

4. Chief Magistrate Judge John Roper, 2012 15th Street, Suite 870, Gulfport, MS 39501.

5. G. Gerald Cruthird, Esquire (Counsel for Appellee), Post Office Box 1050, Picayune, MS 39466.

6. Jack E. Truitt, Esquire (Counsel for Appellee), The Truitt Law Firm, LLC, 149 North New Hampshire Street, Covington, LA 70433.

7. Henry Laird, Esquire (Counsel for Appellants), Jones Walker, Post Office Box 160, Gulfport, MS 39502.

## STATEMENT REGARDING ORAL ARGUMENT

While Appellants, Trout Point Lodge, Limited, a Nova Scotia Limited Liability Company, Vaughn Perret and Charles Leary, contend that oral argument is necessary to decide what they contend is a case of first impression in interpreting 28 U.S.C. § 4101 *et seq.* (The SPEECH Act), Appellee, Doug K. Handshoe, asserts that this case, involving the grant of a motion for summary judgment, does not involve significant legal issues not previously authoritatively decided; moreover, there are no splits among the various Federal Circuit Courts regarding the issues before this Honorable Court, which would merit oral argument. Further, considering the routine nature of the granting or denial of summary judgments, as in this case, on undisputed facts, this case simply does not justify oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

STATEMENT REGARDING ORAL ARGUMENT .. . . . . . . . . . . . . . . . . . . . . .  iii

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

STATEMENT OF THE CASE .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS RELEVANT TO THE ISSUES SUBMITTED FOR
REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

SIGNATURE OF COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## LIST OF AUTHORITIES

2 Law of Defamation § 9:37 (2d ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 1441. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 4101 (The SPEECH Act). . . . . . . . . . . . 3,6,7,10,11,14,15,16,17,19,27

28 U.S.C. § 4102 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,16

28 U.S.C. § 4103 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed.R.Civ.P.56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Civ.P.56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Armistead v. Minor, 815 So.2d 1189, 1193, 1196 (Miss. 2002). . . . . . . . . . 20,22,23

Brown v. Bob Tyler Suzuki, Inc., 1:11CV116HSMO-JMR, 2012 WL 293486
        at *2   (S.D. Miss. Jan 31, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Canada Act, 1982 c.11 (U.K.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Canadian Charter of Rights and Freedoms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982
        Being Schedule B of the Canada Act, 1982, c.11 (U.K.). . . . . . . . . . . . . . . 17

Coatings Mfrs., Inc. v. DPI, Inc. 926 F.2d 474, 476 (5th Cir. 1991) . . . . . . . . . . . . 9

Curtis Pub.Co. v. Butts,  388 U.S. 130, 155 (1967) . . . . . . . . . . . . . . . . . . . . . . 24

Dep't of Human Servs. State of Miss. V. Shelnut, 772 So. 2d 1041, 1044 (Miss
        2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ferguson v. Watkins, 448 So.2d 271, 276  (Miss. 1984).. . . . . . . . . . . . . . . . . . 23

First A. Bank v. First Am. Transp. Title Ins. Co., 585 F. 3d 833,
        836-37 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fulton v. Miss. Publishers Corp., 498 So.2d 1215, 1216 (Miss. 1986) . . . . . . . . 20

Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974). . . . . . . . . . . . . . . . . . . . 26

Grant v. Torstar Corp., [2009] 3 S.C.R. 640 (Can.) . . . . . . . . . . . . . . . . . . . . . 18, 19

Hill v. Church of Scientology of Toronto, [1995] 2 S.C.R. 1130. . . . . . . . . 24,25,26

Hilton v.Guyot, 159 U.S. 113 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988) . . . . . . . . . . . . . . . . . 23

Int'l Transactions, Ltd. V. Embotelladora Agral Regiomontana, SA de CV, 347
        F.3d 589, 594 (5thCir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Investorshub.com, Inc. v. Mina Mar Group, No. 4:11cv9-RH/WS,
        (N.D. Fla. June 20, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

John v. State of La. (Bd of Trustees for State Colleges and Universities),  757
        F.2d 698, 705 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kane v. Nat'l Union fire Ins. Co., 535 F.3d 380, 384 (5th Cir. 2008). . . . . . . . . . 8,9

Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574,587,
        106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Moore Speech:  Preempting Privacy Tourism, 33 Hastings Comm. & Ent
        L.J. 379, 380 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Moore Speech:  Preempting Privacy Tourism, 33 Hastings Comm. & Ent
        L.J. 379, 382-83 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

Moore Speech:  Preempting Privacy Tourism, 33 Hastings Comm. & Ent
        L.J. 379, 383-85 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

vi.

New York Times Co. v. Sullivan, 376 U.S. 254,283 (1964) . . . . . . . . . . . . . . . . 24

Peter Scalamandre & Sons, Inc. v. Kaufman, 113 F.3d 55, 560-61 (5th Cir. 1997). 25

Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 776 (1986). . . . . . . 19,20,22

P.L. Blake v. Gannet Co., 529 So.2d 595, 602 (Miss 1988). . . . . . . . . . . . . . . . . 22

Revell v. Lido, 317 F.3d 467, 475 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . 13,14

Roth v. United States, 354 U.S. 476, 484, 487 (1957) . . . . . . . . . . . . . . . . . . . . . 23

Sheline v. Dun & Bradstreet Corp., 948 F.2d 174, 176 (5th Cir. 1991). . . . . . . . . . . 9

SPEECH Act, Pub. L. No. 111-223, 124 Stat. 424 . . . . . . . . . . . . . . . . . . . . . . . . 15

Summary Judgment under the Federal Rules:  Defining Genuine Issues of
    Material Fact, 99 F.R.D. 465, 484 n. 92 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,20

Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan,
    493 F.3d 533, 537 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . 13

vii.

## STATEMENT OF THE CASE

On September 1, 2011, the Appellants, Trout Point Lodge, Vaughn Perret, and Charles Leary, filed their complaint for defamation and related relief (First Amended Statement of Claim) in the Supreme Court of Nova Scotia, Canada against Appellee, Doug K. Handshoe, a Mississippi citizen. (R. Vol. 1, p. 94; R.E. 3). Handshoe was purportedly served with the Claim, yet he did not make an appearance in the Canadian court.

In the Canadian litigation, Trout Point, Perret, and Leary alleged that Handshoe, the owner and publisher of a public affairs blog entitled "Slabbed.org," published false and defamatory statements that Trout Point, Perret, and Leary were involved in and associated with the corruption, fraud, and money laundering schemes involving former Jefferson Parish, Louisiana President Aaron Broussard and his administration. (First Amended Statement of Claim – R. Vol. 1, p. 94; R.E. 4). The Slabbed.org blog is mainly focused on insurance issues, litigation of note, and public corruption involving the Gulf Coast, primarily Mississippi and Louisiana.

The Appellants also contended that Handshoe had falsely published that Trout Point, Perret, and Leary had misled investors and Canadian court officials concerning their ownership of a failed business they had in Canada. (R. Vol. 1, pp.

1

95-115; R.E. 4). They also contended that Handshoe falsely published that Trout Point Lodge suffered a series of business failures, was on the verge of bankruptcy, and was owned by unscrupulous persons in Perret and Leary. (R. Vol. 1, pp. 95-115; R.E. 4).

Handshoe chose not to make an appearance in the Canadian proceeding, and in his absence, the foreign court made an adjudication that Handshoe had defamed the Appellants. The Canadian court entered a default judgment against him, on February 2, 2012, and entered judgment on the defamation claims against Handshoe, awarding Trout Point Lodge $75,000.00 in general damages; Vaughn Perret $100,000.00 in general damages, $50,000.00 in aggravated damages and $25,000.00 in punitive damages; and Charles Leary $100,000.00 in general damages, $50,000.00 in aggravated damages, and $25,000.00 in punitive damages, with costs in favor of the Appellants in the amount of $2,000.00. (R. Vol. 1, p. 123; R.E. 4).

On March 8, 2012, Trout Point, Perret, and Leary enrolled their Canadian defamation judgment in the Circuit Court of Hancock County, Mississippi (R. Vol. 1, p. 121), and on March 26, 2012 pursuant to 28 U.S.C. § 1441, Handshoe removed the State Court litigation to the United States District Court for the Southern District of Mississippi, Southern Division. (R. Vol. 1, p. 10).

***All of the parties agreed that all issues were strictly legal in nature***, and they conducted no discovery. Instead, the parties submitted the matter to the District Court for a decision on the enforceability of the Canadian judgment by way of cross-motions for summary judgment. These motions sought the decision of the District Court as to whether, as a matter of law, the Canadian judgment was enforceable against Handshoe pursuant to provisions of the SPEECH Act.

On December 19, 2012 the District Court entered summary judgment in favor of Handshoe and against Trout Point, Perret, and Leary finding that, pursuant to the SPEECH Act, Trout Point, Perret and Leary's judgment would not have been entered against Handshoe in a Mississippi court having jurisdiction over Handshoe since Trout Point, Perret, and Leary failed to prove that Canadian defamation laws were not as protective of free speech as American laws and that the defamatory statements at issue were false. (R. Vol. 6, p. 1553; R.E. 9; R. Vol. 6, p. 1534; R.E. 8).

On December 26, 2012, Tout Point, Perret, and Leary perfected their appeal to this Court by filing their Notice of Appeal. (R. 6, p. 1554; R.E. 2).

## <u>STATEMENT OF FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW</u>

Slabbed New Media, LLC owns an Internet website, Slabbed.org ("Slabbed"), sometimes referred to as a "blog." Appellee, Doug K. Handshoe, is

the owner of this website, on which he reports on issues such as ongoing civil and criminal court cases, Hurricanes Katrina and Rita, the Gulf Oil Spill, political corruption, and other miscellany.

Slabbed has been instrumental in its reporting on the ongoing corruption scandal, indictment, and guilty plea of Aaron Broussard, former Parish President of Jefferson Parish, Louisiana.  Broussard was charged with allegations of kickback schemes, money laundering, and fraud while in office, and he eventually plead guilty to some of the charges contained within the original indictment.

During his time in office, Broussard owned property in Nova Scotia, Canada, which he used to funnel kickbacks from contractors doing business with Jefferson Parish, facts set forth in the factual basis of an indicted co-defendant. Media reports revealed that the Appellants, Charles Leary and Vaughn Perret, co-owned and/or managed this property, and they eventually conceded such, although they originally denied any association with Broussard; in addition, Appellants own and operate the Trout Point Lodge, which was adjacent to Aaron Broussard's properties in Nova Scotia.

On May 6, 2011, Appellants served an undated notice of claim on Handshoe, and on August 9, 2011, they filed a defamation claim in Nova Scotia, Canada in

response to the written statements of defendant and post commenters. This claim was amended on September 1, 2011 to include additional allegations related to written statements on the blog.

Handshoe never subjected himself to the personal jurisdiction of the Canadian court in the Canadian defamation lawsuit and did not defend himself in said proceedings. As a result of the failure to defend himself in the Canadian defamation suit, the Appellants obtained a money judgment against Handshoe and an injunctive order prohibiting Slabbed, from "disseminating, posting on the internet or publishing, in any manner whatsoever, directly or indirectly, any statements or comments about the plaintiffs" and a mandatory injunction requiring that all statements regarding Appellants be removed from the blog.

On or about March 8, 2012, the Appellants, Trout Point, Perret and Leary, filed their foreign libel judgment in the Circuit Court for Hancock County, Mississippi in an effort to enroll and, eventually, make executory the Canadian judgment against defendant. That State Court action was then removed to the United States District Court for the Southern District of Mississippi on or about March 26, 2012, pursuant to the provisions of 28 U.S.C. §4103.

The foreign judgment was rendered by a Canadian court without any consideration to the due process rights of Doug K. Handshoe. More importantly,

the foreign court completely failed to make a threshold determination that the laws of Canada would afford Handshoe as much free speech protection as he would enjoy in the United States. Furthermore, there was no showing, in the Canadian court or before the Federal District Court in the United States, that the Appellants could have prevailed in establishing that they were the subject of defamation and entitled to damages under the laws of the State of Mississippi. Both of these failures on the part of the Appellants, proved to be fatal to their efforts to make the Canadian judgment enforceable in the United States, and as a matter of law, their Canadian defamation judgment was repugnant to the SPEECH Act. Accordingly, the District Court did not err in granting Handshoe summary judgment as a matter of law dismissing the efforts of the Appellants to enroll and execute on their foreign judgment.

## <u>SUMMARY OF THE ARGUMENT</u>

The Canadian court which rendered a default defamation judgment against the Appellee, Doug K. Handshoe, did not have jurisdiction over the Appellee. Furthermore, the Canadian judgment against Appellee was violative of the SPEECH Act, which requires that the foreign court judgment meet several criteria before the judgment can be given full faith and credit in the United States:

1. The laws of the foreign country as applied to the case litigated in that

6

venue as protective of free speech as are the laws of the United States; or in the alternative,

2. The foreign defamation judgment entered against the Appellant would have been rendered against the Appellant, under the substantive Mississippi law, just as if the case had been tried in Mississippi.

The Appellants failed to establish, as a matter of law, either of the mandatory requirements for the enforcement of a foreign libel judgment under the SPEECH Act. Thus, the District Court did not err in granting the Motion for Summary Judgment of Handshoe and in denying the Motion for Summary Judgment filed by Trout Point, Perret and Leary.

## ARGUMENT

***The appellate review standard does not support the reversal of the District Court's dismissal considering that the decision turned on the interpretation of the SPEECH Act on virtually undisputed facts.***

The district court's grant of summary judgment is reviewed under the *de novo* standard of appellate review, and the appellate court will apply the same standard as the district court in deciding whether the motion for summary judgment should have been granted or denied. First Am. Bank v. First Am. Transp. Title Ins. Co., 585 F.3d 833, 836–37 (5th Cir.2009); Wade v. Hewlett–Packard Dev. Co. LP Short Term Disability Plan, 493 F.3d 533, 537 (5th Cir.2007). Thus, the court of appeals considers an appeal in the same manner as the trial court - summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The evidence is viewed by the court of appeals in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If a review of the record reveals that there are no genuine issues of material fact and that the mover is entitled to summary judgment as a matter of law, then the court is duty-bound to grant judgment dismissing the claims. Kane v. Nat'l

8

Union Fire Ins. Co., 535 F.3d 380, 384 (5th Cir.2008) (internal quotations omitted); *see also* Fed.R.Civ.P. 56(c). Moreover, summary judgment is appropriate where the only issue before the court is a pure question of law. Sheline v. Dun & Bradstreet Corp., 948 F.2d 174, 176 (5th Cir. 1991).

Generally, though, where the facts are undisputed, and the decision to grant summary judgment turns on an interpretation of the applicable law, the district court will be accorded great discretion as to its decision. *See* Coatings Mfrs., Inc. v. DPI, Inc., 926 F.2d 474, 476 (5th Cir. 1991). Furthermore, when the parties proceed on the same legal theory and on the same material facts, at least one commentator has suggested that the submission of cross-motions for summary judgment "is equivalent to [consent to] a stipulated trial on an agreed statement." Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 484 n. 92; John v. State of La. (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 705 (5th Cir. 1985).

In the case before the Court, the parties did not engage in any discovery prior to the filing of cross-motions for summary judgment. This was because the parties did not significantly dispute the underlying facts of the case[1]; rather, the

---

[1] Appellee did not enter an appearance in the Canadian proceeding to dispute the truthfulness of the Appellants' contentions; had he, he would have contested those claims. However, for purposes of the District Court deciding the cross-Motions for Summary Judgment, Appellee did not challenge the underlying testimony or claims in the Canadian court.

9

enforceability of the Canadian libel judgment turned upon the District Court's legal interpretation of the SPEECH Act and its application to the undisputed facts of the case.

A *de* novo review of the record in this matter will reveal that the District Court merely applied the mandates of the SPEECH Act to the underlying facts of the case to ascertain whether the Canadian judgment was viable and enforceable in the United States. The Appellants, as a matter of law, simply did not show that their foreign libel judgment could pass muster under either of the requirements of the SPEECH Act for recognition under the United States Constitution or pursuant to Mississippi statutes and jurisprudence. While this Court is surely entitled to review this matter *de novo*, with the facts not seriously disputed between the litigants, it cannot be said that the District Court's application of the law to the facts, in this instance, was erroneous. Additionally, there is some support for the argument that the District Court's decision should be accorded great deference in light of the fact that the parties submitted the case for disposition on cross-motions for summary judgment, which "is equivalent to [consent to] a stipulated trial on an agreed statement." Viewing the case in that light, a reversal of the District Court's decision would be tantamount to substituting this Honorable Court's view of the case for that of the Lower Court. Nevertheless, whether upon a *de novo* review of

10

the record or according the Trial Court its due discretion, this Honorable Court should affirm the granting of the Motion for Summary Judgment in favor of the Appellee, Doug K. Handshoe, which dismissed the foreign libel judgment.

***The Canadian court which rendered a libel judgment against a United States citizen with no connection to the forum did not have personal jurisdiction over the Appellee such that the judgment was invalid.***

The SPEECH Act states that "a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that the exercise of personal jurisdiction by the foreign court comported with the due process requirements that are imposed on domestic courts by the Constitution of the United States." 28 U.S.C. § 4102 (2006). The statute specifies that the party seeking enforcement of the judgment has the burden of proof. Id.

Additionally, under Mississippi law, "the enforcement of a judgment entered in a foreign nation is governed by state law and the principle of comity." Dep't of Human Servs. State of Miss. v. Shelnut, 772 So. 2d 1041, 1044 (Miss. 2000). Principles of international comity have established that the judgment of a foreign court will be recognized as conclusive in a federal court if five requirements are satisfied. Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV, 347 F.3d 589, 594 (5th Cir. 2003) (citing Hilton v. Guyot, 159 U.S. 113

(1895)).   First, the foreign judgment must have been rendered by a court of competent jurisdiction over the cause and parties. Id.   Second, the judgment must be supported by due allegations and proof. Id.   Third, the relevant parties must have had an opportunity to be heard. Id.   Fourth, the foreign court must have followed procedural rules. Id.   Finally, the foreign proceedings must have been stated in a clear and formal record. Id.

The Canadian judgment was simply not enforceable in Mississippi because the Canadian court did not have personal jurisdiction over Appellee, Handshoe. Personal jurisdiction must be determined by a "two-step inquiry:  (1) the defendant must be amenable to service of process under the forum state's long-arm statute; and (2) the exercise of jurisdiction under the state statute must comport with the dictates of the Due Process Clause of the Fourteenth Amendment." Brown v. Bob Tyler Suzuki, Inc., 1:11CV116HSO-JMR, 2012 WL 293486, at *2 (S.D. Miss. Jan. 31, 2012).   In order to satisfy due process requirements, the court must find that "(1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with that state; and (2) the exercise of personal jurisdiction does not offend traditional fair play and substantial justice." Id.   Further, in regard to minimum contacts, it must be determined whether there is specific jurisdiction, which occurs when defendant's "contacts

with the forum state arise from, or are directly related to, the cause of action," or general jurisdiction, which occurs when the contacts are not directly related to the cause of action, but "the defendant's contacts with the forum state are both continuous and systematic." Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994).

Handshoe did not have the requisite minimum contacts with Canada to be subject to either specific or general jurisdiction in Canada. Handshoe resides in Mississippi, and Slabbed has its principal place of business in Mississippi. While Handshoe may have posted about Trout Point, Perret and Leary, he never conducted business in Canada, and his posts on Slabbed were not targeted to Canadian readers. In Revell v. Lidov, 317 F.3d 467, 475 (5th Cir. 2002), this Honorable Court held that a Texas court did not have personal jurisdiction over a nonresident author who published defamatory statements about a Texas resident because "the post to the bulletin board … was presumably directed at the entire world," and "not specifically directed at Texas . . . ."

Similarly, Slabbed is not written for readers in Canada. The tagline on the Slabbed website is "Alternative New Media for the Gulf South." The subject matter of the blog is entirely focused on exposing local corruption and exploring local political issues. The Appellants only received coverage on this blog because of their connection with Aaron Broussard, a former Louisiana politician. While the

13

blog may have attracted a small readership in Nova Scotia, the posts were in no way targeted at those readers. Following the reasoning in <u>Revell</u>, the publishing of a local blog did not establish minimum contacts sufficient to subject Handshoe to specific jurisdiction in Canada.

The Canadian court did not have personal jurisdiction over Handshoe either when it issued its judgment; therefore, the due process requirements were not satisfied. While the District Court did not pass on this issue, perhaps because it proceeded to address the merits of the Appellants' claims in the context of the SPEECH Act, the lack of jurisdiction over Handshoe by the foreign court provides yet another compelling basis for this Honorable Court to reject the Canadian libel judgment as valid in the United States.

***The Appellants failed, as a matter of law, to demonstrate that their foreign libel judgment was obtained consistent with the First Amendment free speech guarantees or in conformity with the Mississippi law pertaining to defamation, and the Appellee showed that there was no genuine issue of fact or law that entitled him to summary judgment.***

The SPEECH Act was enacted in 2010 to safeguard First Amendment protections in the United States. Specifically, the statute was enacted to prevent defamation plaintiffs from bringing suits in foreign jurisdictions with weaker

14

freedom of speech protections, a practice known as "libel tourism."  Libel tourism,

according to the Congressional Research Service, is "the phenomenon whereby a

plaintiff brings a defamation suit in a country with plaintiff-friendly libel laws,

even though the parties might have had relatively few contacts with the chosen

jurisdiction prior to the suit."Stephen Bates, More Speech: Preempting Privacy

Tourism, 33 Hastings Comm. & Ent L.J. 379, 380 (2011). In passing the Act,

Congress noted that "[t]hese foreign defamation lawsuits not only suppress the free

speech rights of the defendants to the suit, but inhibit other written speech that

might otherwise have been written or published but for the fear of a foreign

lawsuit."  SPEECH Act, Pub. L. No. 111-223, 124 Stat. 424.  Thus, Congress has

made quite clear that without this statute, a defamation plaintiff could circumvent

the important First Amendment protections by simply filing suit in a foreign

jurisdiction that provides more favorable law, such as Canada, and then seek to

enforce the judgment in the United States.  This would not only place individuals

who have relied on their First Amendment rights at risk but also have a chilling

effect on an individual's future willingness to freely express himself, a right that is

at the core of the principles espoused by the Founding Fathers.

Accordingly, plaintiffs file libel suits in jurisdictions less protective of

speech whenever possible. Stephen Bates, More Speech: Preempting Privacy

Tourism, 33 Hastings Comm. & Ent L.J. 379, 382-83 (2011). In fact, Britain is recognized as the "libel tourism capital," and it cannot be said to be a stretch that Canada, which is subject to the Crown, is much different. Id.

The SPEECH Act prohibits the recognition or enforcement of a foreign judgment for defamation unless the domestic court can make one of two determinations. 28 U.S.C. § 4102. First, the judgment may be enforced if:

> The defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located.

Id. Second, even if the domestic court is unable to make the first determination, it may enforce the foreign judgment if the party opposing the enforcement of the judgment "would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located." Id.

Comparison of Canadian free speech protection in relation to domestic law is not a fact-intensive issue, but rather a pure legal, comparative analysis. At least one other court has held that Canadian law provides less protection of free speech than the First Amendment and domestic law. Investorshub.com, Inc. v. Mina Mar Group, No. 4:11cv9-RH/WS, (N.D. Fla. June 20, 2011). In that case, Mina Mar

Group obtained a Canadian defamation judgment against Investorshub.com based on the content of writing posted on the InvestorsHub.com website. The United States District Court for the Northern District of Florida *declined to enforce the judgment pursuant to the SPEECH Act because Canadian law offers less protection that United States law*. Likewise, in the case at bar, the defamation law applied in the foreign jurisdiction did not provide the same level of protection as domestic law would provide.

Canada's protection of free speech is listed as a "fundamental freedom" in section 2(d) of the Canadian Charter of Rights and Freedoms. Specifically, the freedom afforded is "freedom of thought, belief, opinion and expression, including freedom of the press and other media of communication." Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, *being* Schedule B to the Canada Act, 1982, c. 11 (U.K.). The Supreme Court of Canada articulated the following burden of proof for a defamation plaintiff in order to obtain judgment and an award of damages:

> (1) that the impugned words were defamatory, in the sense that they would tend to lower the plaintiff's reputation in the eyes of a reasonable person; (2) that the words in fact referred to the plaintiff; and (3) that the words were published, meaning that they were communicated to at least one person other than the plaintiff.

<u>Grant v. Torstar Corp.</u>, [2009] 3 S.C.R. 640 (Can.). Further, that case explains that the plaintiff does not need to demonstrate intent on the part of the defendant, or even carelessness, ***classifying the tort as "one of strict liability."*** <u>Id.</u> (Emphasis added). Once the plaintiff proves the aforementioned elements, falsity and damages are presumed, and "the onus is then shifted to the defense in order to escape liability." <u>Id.</u>

Albeit a comparison to British libel laws, it is apparent that the laws of Canada are not much different, yet less protective of free speech than in the United States, as exemplified by the following:

> Their libel laws require the defendant to prove truth, whereas in the United States and most other countries, the plaintiff must generally prove falsity.

> Where a defendant cannot prove the truth of the defamatory assertion, the only other broadly applicable defense is the "responsible journalism" defense.

> Foreign libel claims are weighed according to the same standard regardless of the plaintiff's status. By contrast, public officials and public figures must meet the higher "actual malice" standard to prevail in the United States.

> Unlike American plaintiffs, plaintiffs in foreign countries such as Britain can win damages without proving harm to their reputations. British law creates an "irrebuttable presumption . . . that the publication of a defamatory article causes damage to the reputation of the person defamed." Indeed, a plaintiff need not even have a reputation before the appearance of the publication.

> Britain follows the multiple-publication rule, whereas the United States follows the single-publication rule. That means that in Britain, a new libel can arise each time an individual accesses an article--potentially rendering

18

the one-year statute of limitations meaningless, especially for material in online archives.

Stephen Bates, <u>More Speech: Preempting Privacy Tourism</u>, 33 Hastings Comm. & Ent L.J. 379, 383-85 (2011). By virtue of this comparative analysis, it is abundantly clear that the Handshoe was not afforded the same free speech protections as would have been afforded in the United States.

In the case before this Honorable Court, the District Court granted summary judgment in favor of Handshoe precluding the enforcement of the Canadian libel judgment in this country. In making that ruling, the Lower Court found that the judgment did not meet either one of the criteria of the SPEECH Act for enforcement in the United States. The Court cited <u>Philadelphia Newspapers, Inc. v. Hepps</u>, 475 U.S. 767 (1986), which requires that the plaintiff in a defamation action prove that the complained of statements are false. In contrast, the Court recalled the <u>Grant</u> decision of the Canadian courts which does not require that the plaintiff prove the falsity of the statement. This vast difference in the burden  proof requirements in a defamation case was, as a matter of law, supportive of the District Court's ruling that Canadian law does not afford a United States citizen being sued there as much First Amendment protection as is afforded under the United States Constitution. This decision of the Trial Court, whether under a *de novo* review or abuse of discretion standard of review, cannot be set aside.

19

Additionally, though, the District Court found that the Canadian court did not make any prefatory finding that the Canadian laws were as protective of free speech as the laws of the United States or Mississippi, nor did the foreign court specifically rule that the statements attributed to Handshoe about Trout Point, Perret or Leary were false. This is an essential element of a defamation claim, whether under free speech concepts set forth in <u>Hepps</u>, supra, or under Mississippi jurisprudence.

Mississippi law provides for the burden of proof in libel cases:

> A claim of defamation requires that the plaintiff establish: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting to at least negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

<u>Fulton v. Miss. Publishers Corp.</u>, 498 So. 2d 1215, 1216 (Miss. 1986). A defamatory statement is one that "tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." <u>Id.</u> at 1217. Public figure plaintiffs have the "additional burden of proving actual malice by clear and convincing evidence." <u>Armistead v. Minor</u>, 815 So. 2d 1189, 1193 (Miss. 2002).

20

The Appellants claimed four defamatory themes in the series of blog posts written by Handshoe.  First, they claimed that Slabbed identified and linked them with the Jefferson Parish political corruption scandal involving ex-Parish President, Aaron Broussard.  Second, they claimed that the Appellee accused them of "[misleading] investors and court officials in litigation with the Atlantic Canada Opportunities Agency."  Third, they claimed that Handshoe stated that the Trout Point Lodge "is actively failing, near bankruptcy, having once relied on the good graces of Aaron Broussard."  Finally, they claimed that Handshoe's remarks about their lifestyle are defamatory. However, the District Court found, as an initial matter, that the Appellants did not establish the falsity of any of Handshoe's statements in the foreign proceeding, a weakness which was fatal to enforcement of their claims here.

Plaintiffs would not have recovered under domestic law for several reasons. First, as the District Court pointed out, a Mississippi court would have required the plaintiff to prove, as an initial proposition, that the statements of Handshoe were false. They would have been unable to prove that defendant's statements were false.  Second, had the statements been false, as public figures, they would have been unable to prove that defendant acted with actual malice.  Third, many of the

statements claimed to be defamatory were, at worst, arguably only insults protected by the First Amendment.

Mississippi law states that the "threshold question" in a defamation case is whether the material presented is false, as truth is an "absolute defense." P.L. Blake v. Gannet Co., 529 So. 2d 595, 602 (Miss. 1988).   In fact, Mississippi law recognizes truth as a defense as long as the statement was "substantially true." Id. at 603.   The burden of proving falsity is on the plaintiff. Id. See also Phila. Newspapers, Inc. v. Hepps, 475 U.S. 767, 776 (1986) ("We believe that the common law's rule on falsity—that the defendant must bear the burden of proving truth—must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.")

For example, in Armistead, 815 So. 2d at 1196, the Supreme Court held that a newspaper columnist who reported on a former town sheriff's involvement in several Mississippi scandals was not liable for defamation because the statements were substantially true.  The court found after reviewing the record that while not all of the statements had "an adequate basis of fact in the record," the burden of disproving the statements rested on the plaintiff, and he was unable to carry this burden. Id. at 1195. While the plaintiff "[relied] on his own denials to serve as

proof" of falsity, this was insufficient to counteract the "bulk" of the articles and reports. Id. The Supreme Court affirmed the trial court's holding that the truth of the statements barred recovery for defamation. Id. at 1196.

Like in Armistead, Handshoe's statements relating to the Appellants' involvement with Aaron Broussard, their lawsuit with the Atlantic Canada Opportunities Agency, and the financial viability of Trout Point Lodge are not actionable. Appellee's statements relating to the Appellants' sexual orientation were also factual statements, as plaintiffs are avowed homosexuals engaged in a relationship. Under Mississippi law, this is an absolute defense. Moreover, the First Amendment protects commentary sexual orientation. Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988). The First Amendment protects "[a]ll ideas having even the slightest redeeming social importance," including "unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion," unless they are "excludable because they encroach upon the limited area of more important interests." Roth v. United States, 354 U.S. 476, 484 (1957). Moreover, the Supreme Court of Mississippi has explicitly stated that "nothing in life or our law guarantees a person from immunity from occasional sharp criticism . . . . Caustic commentary is simply not actionable libel." Ferguson v. Watkins, 448 So. 2d 271, 276 (Miss. 1984).

The Canadian Supreme Court has expressly declined to adopt the actual malice standard set forth in <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 283 (1964) and <u>Curtis Pub. Co. v. Butts</u>, 388 U.S. 130, 155 (1967). <u>Hill v. Church of Scientology of Toronto</u>, [1995] 2 S.C.R. 1130.   In <u>Hill</u>, the judge considered whether it would be appropriate to adopt the actual malice requirement in Canada. <u>Id.</u>  In this analysis, the judge included a summary of critiques of the actual malice standard from commentators in the United States and, as well as, court opinions from Australia and the United Kingdom rejecting the standard. <u>Id.</u>  The judge emphasized that "[i]t has been argued the [<u>Sullivan</u>] decision has shifted the focus of defamation suits away from their original essential purpose. <u>Id.</u>  Rather than deciding upon the truth of the impugned statement, courts in the U.S. now determine whether the defendant was negligent." <u>Id.</u>  In summary, the judge stated:

> I can see no reason for adopting [the <u>Sullivan</u> standard of actual malice] in Canada in an action between private litigants.  The law of defamation is essentially aimed at the prohibition of the publication of injurious false statements.  It is the means by which the individual may protect his or her reputation which may well be the most distinguishing feature of his or her character, personality and, perhaps, identity … Surely it is not requiring too much of individuals that they ascertain the truth of the allegations they

24

publish.  The law of defamation provides for the defences of fair comment and of qualified privilege in appropriate cases.  Those who publish statements should assume a reasonable level of responsibility.

Id.  As United States courts have stated, "proving actual malice is a heavy burden."

Peter Scalamandre & Sons, Inc. v. Kaufman, 113 F.3d 55, 560-61 (5th Cir. 1997).

Thus, it is a difficult feat for a plaintiff who is a public figure or a public official to prevail in a defamation suit.  By enacting this difficult hurdle for public figures and public officials, the United States courts have upheld the importance of the free speech rights afforded by the First Amendment. In contrast, Canada has expressly declined to extend these First Amendment principles to its laws, increasing the likelihood that a public figure or a public official would be able to prevail in a defamation lawsuit.  Since a Canadian plaintiff, even if found to be a public figure or public official, does not have to prove actual malice in order to prevail in a Canadian defamation lawsuit, Canadian law affords less protection to an individual's free speech rights, placing greater emphasis on determining the truth of the statement, rather than the level of fault of the speaker.   Therefore, in comparison to domestic law, which affords greater First Amendment protection by requiring public figures to show actual malice, Canadian law provides less protection.

Further, Canadian law is less stringent than domestic law in its allowance of punitive damages. In the United States, a court may not award punitive damages unless the plaintiff, whether a public or a private figure, proves actual malice. 2 Law of Defamation § 9:37 (2d ed.). See also Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974) ("[T]he States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.") However, Canadian law applies a much more lenient standard for determining when punitive damages may be awarded. In Hill, the court stated that "[p]unitive damages may be awarded in situations where the defendant's misconduct is so malicious, oppressive and high handed that it offends the Court's sense of decency." It is clear that United States law provides greater free speech protection in this regard as well.

In light of the discussion above, there is no genuine issue of material fact or law as to whether Canadian law provides the same protection of freedom of speech as domestic law. In this case, the Canadian court ruled upon a libel claim brought by the plaintiffs for blogs and comments published by the defendants in the United States. As a matter of law, it was without cavil that the Canadian law applied to the underlying dispute did not afford equal free speech protections to Appellee,

Handshoe, as he would have enjoyed under United States law. Thus, it was entirely appropriate for the District Court to grant summary judgment

Finally, it is worth noting that the transcript of the Nova Scotia decision contained no discussion of the SPEECH Act, and the judge made no preliminary findings relating to the validity of her decision in United States courts. Because of the requirements of the SPEECH Act, the failure of the Canadian court to make preliminary findings regarding the comparability of United States and Canadian free speech protection made the libel judgment invalid, as found by the District Court. This failure of the foreign court was likewise fatal.

## Conclusion

The Appellants failed to demonstrate, as a matter of law, that Appellee was afforded at least as much protection for freedom of speech in the Canadian court, a foreign jurisdiction, as he would have been afforded in a domestic court. Further, Appellants did not prove, as a matter of law, that Handshoe would have been held liable for defamation by a domestic court. As a matter of law, the Appellee was entitled to have the libel judgment against him dismissed with prejudice. Thus, the District Court ruled correctly in this matter that the law did not support a finding in

27

favor of summary judgment. Accordingly, the rulings of the District Court should not be disturbed.

Respectfully submitted, this the 25TH day of March, 2013.

**THE TRUITT LAW FIRM**
A Limited Liability Company


*s/ Jack E. Truitt*
JACK E. TRUITT, LA. BAR NO. 18476
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for Appellee, Douglas K. Handshoe

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Brief of Appellees has been filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit via the court's CM/ECF filing system which sent notification of same to the following:

The Honorable Louis Guirola, Jr.
Chief District Judge
2012 15th Street, Suite 814
Gulfport, MS 39501

The Honorable Judge John Roper
Chief Magistrate
2012 15th Street, Suite 87
Gulfport, MS 39501

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, MS 39466

Henry Laird, Esquire
JONES WALKER
Post Office Drawer 160
Gulfport, MS 39502

This the 25th day of March, 2013.

<u>s/ Jack E. Truitt</u>
JACK E. TRUITT, LA BAR NO. 18476
**THE TRUITT LAW FIRM**
A Limited Liability Company
Counsel for Appellee, Douglas K. Handshoe

29

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certified that the

Appellees' Brief complies with the type-volume limitations of Fed. R. App.

32(1)(7).

1.    EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5th Cir. R. 32.2, THE BRIEF CONTAINS **7,427** WORDS.

2.    THE BRIEF HAS BEEN PREPARED IN PROPORTIONALLY SPACED TYPEFACE USING WORD PERFECT SOFTWARE, IN TIMES NEW ROMAN, 14 POINT FONT.

3.    THE UNDERSIGNED UNDERSTANDS A MATERIAL MIS-REPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed. R. App. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THIS BRIEF.

*s/ Jack E. Truitt*
JACK E. TRUITT, LA BAR NO. 18476
**THE TRUITT LAW FIRM**
A Limited Liability Company
Counsel for Appellee, Douglas K. Handshoe